1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

8
9
10

| | |
|---|---|
| WILLIAM LESSIN, TAMER KAHLIL, MARK PREISS, JULIE SNODGRASS, JOHN FARLEKAS, WILLIAM VINSON, JOYCE JENSEN, DAVID MORRIS, and SCOTT BITTNER, on behalf of themselves and all others similarly situated, <div align="right">Plaintiffs,</div><br>v.<br><br>FORD MOTOR COMPANY, a Delaware corporation; and Does 1 through 10, inclusive, <div align="right">Defendant.</div> | Case No.:  3:19-cv-01082-AJB-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART FORD MOTOR COMPANY'S MOTION TO DISMISS**<br><br>**(Doc. No. 17)** |

11
12
13
14
15
16
17
18
19
20

Presently before the Court is Defendant Ford Motor Company's ("Ford") motion to dismiss Plaintiffs' First Amended Complaint ("FAC") or in the alternative to strike nationwide class allegations. (Doc. No. 17.) Plaintiffs opposed the motion, (Doc. No. 21), and Ford replied, (Doc. No. 23.) For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Ford's motion to dismiss.

## I.     BACKGROUND

Plaintiffs William Lessin, Mark Preiss, Julie Snodgrass, John Farlekas, William Vinson, Joyce Jensen, David Morris, and Scott Bittner bring several causes of action

1

against Ford for alleged latent defects in various 2005-2019 Ford F-250 and F-350 trucks ("Class Vehicles" or "Vehicle"). (First Amended Complaint ("FAC"), Doc. No. 11 ¶ 93.) These alleged latent defects involve abnormal wearing and loosening of the Class Vehicles' suspension components (i.e. track bar bushing, steering dampener, balls joints, control arms, and/or struts), resulting in severe shaking and oscillation of the steering wheel. (FAC ¶¶ 93–95.) Plaintiffs refer to this alleged defect as the "Death Wobble." Plaintiffs allege the shaking causes a loss of handling and control that can only be remedied by a sudden reduction of speed, an unsafe reaction on open highways. (*Id.*) These defects in the Class Vehicles purportedly manifest at different mileage periods during the lifetime of the Class Vehicles. (FAC ¶¶ 128–29.) Some Class Vehicle owners first experience the alleged defect as early as ten miles off the lot, at a time when the Vehicle is still covered by Ford's limited warranty, (FAC ¶ 130), while others first experience the shaking after the warranty had already expired, (FAC ¶ 130.) In support of their allegations, Plaintiffs point out that the National Highway Traffic and Safety Administration's ("NHSTA") complaint database reveals at least 1,265 complaints about the shaking defect. (FAC ¶¶ 97–98, 107, 112, 129.)

On June 10, 2019, Plaintiff Lessin filed a class action complaint on behalf of himself and all others similarly situated. After Ford filed a motion to dismiss the Lessin Complaint, Plaintiffs filed the FAC. The FAC sets forth a number of Plaintiffs from various states, and claims:

- On behalf of Plaintiffs and a nationwide class, the FAC alleges Ford's violations of the Magnuson-Moss Warranty Act.
- On behalf of Plaintiff Lessin and a class of California residents, the FAC alleges violations of the Consumer Legal Remedies Act (or "CLRA"), the California Unfair Competition Law (or "UCL"), the California False Advertising Law, Breach of Express and Implied Warranty, Fraudulent Concealment, and the Song-Berverly Act.
- On behalf of Plaintiff Preiss and a class of Alaska residents, the FAC alleges

violations of the Alaska Fair Unfair Trade Practices and Consumer Protection Act and Breaches of Express and Implied Warranties.

- On behalf of Plaintiff Snodgrass and a class of Arizona residents, the FAC alleges violations of Arizona's Consumer Fraud Act.

- On behalf of Plaintiff Farlekas and a class of Connecticut residents, the FAC alleges violations of Connecticut's Unlawful Trade Practices Act and Breach of Implied Warranty.

- On behalf of Plaintiff Vinson and a class of Georgia residents, the FAC alleges violations of Georgia's Fair Business Practices Act, its Uniform Deceptive Trade Practices Act, and Breaches of Express and Implied Warranties.

- On behalf of Plaintiff Jensen and a class of Florida residents, the FAC alleges violations of Florida's Unfair & Deceptive Trade Practices Act and Breaches of Express and Implied Warranties.

- On behalf of Plaintiff Morris and a class of Nevada residents, the FAC alleges violations of the Nevada Deceptive Trade Practices Act and Breaches of Express and Implied Warranties.

- On behalf of Plaintiffs Bittner, Khalil, and a class of Texas residents, the FAC alleges violations of the Deceptive Trade Practices Act – Consumer Practices Act and Breaches of Express and Implied Warranties.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation

3

omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to make more specific allegations so a defendant "can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1024 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)); *see also Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir.1993).

## III.   DISCUSSION

In the motion to dismiss, Ford seeks dismissal of Plaintiffs' (1) express warranty claims, (2) Magnuson-Moss Warranty Act ("MMWA") claim, (3) implied warranty claims, and (4) fraud-based claims. (Doc. No. 17.) The Court will closely look at each argument below.

### A.   Plaintiffs' Express Warranty Claims

Ford first argues that Plaintiffs' express warranty claims—under the MMWA and the common law of Alaska, California, Florida, Georgia, Nevada, and Texas—all fail because they do not allege at any point during the warranty period they were refused a free repair by a Ford dealer or otherwise experienced multiple unsuccessful repair attempts.

4

(Doc. No. 17-1 at 17–20.) In opposition, Plaintiffs argue they can demonstrate from the FAC's allegations that they gave Ford ample opportunity to repair the affected vehicles, and that Ford failed to do so within a reasonable time. (Doc. No. 21 at 17.)

As a preliminary note, Ford's Limited Warranty provides bumper-to-bumper coverage for three years or for 36,000 miles, whichever occurs first. (Doc. No. 17-5, Ex. C.) The Limited Warranty promises that a Ford dealer would repair, replace, or adjust a covered part only if a vehicle that malfunctions "during normal use during the applicable coverage period" is "taken to a Ford dealership for a warranted repair during the warranty period." (*Id.* at 16.) Under Ninth Circuit authority, "[a] repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time." *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984). The Court will proceed to analyze each Plaintiff's claim, in turn.

### 1.    Plaintiff Lessin (California)

The FAC provides that Plaintiff Lessin brought his Vehicle to Mossy Ford of San Diego "on three occasions within a period of less than three months to correct the Defect without success. On each occasion, Ford has failed to provide an adequate remedy to [the] Death Wobble, denied the existence of the Defect, and has refused to provide repair [of] Plaintiff's vehicle under warranty." (FAC ¶ 22.) The FAC further states that "[o]n April 24, 2018, Plaintiff William Lessin brought the Vehicle to Mossy Ford of San Diego to have the service department address the Death Wobble" to no avail. (*Id.* ¶ 23.) Ford points out Plaintiff Lessin purchased his truck in July 2010 but did not present it to a Ford dealer for a suspension repair until nearly eight years later, in April 2018. While Plaintiffs argue "Lessin had taken his vehicle three separate times to Ford's certified dealer prior to April 2018, and each time attempted to have the defect corrected," (*id.* ¶ 22), it is unclear when these attempted repairs occurred, and whether these attempts fell outside of the warranty period, which would be fatal to Plaintiff Lessin's express warranty claim. *See Clemens v. DaimlerChrysler*, 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of express warranty claims where repairs were sought after warranty period expired). As such, this

5

claim is **DISMISSED** with **LEAVE TO AMEND** for more detail as to when these purported repairs occurred.

### 2.     Plaintiff Khalil (Texas)

Plaintiff Khalil owns a 2013 Ford F-350, which was purchased in 2016. (FAC ¶ 86.) Soon after purchasing the Vehicle, Plaintiff Khalil sought repair, which "redress[ed] the Death Wobble," but by July 2019, Plaintiff Khalil again experienced the shaking defect. (*Id.*) Plaintiff Khalil returned the Vehicle to the dealership again, but this time was told no defect existed and no repairs could be made. (*Id.* ¶ 87.) Here, Plaintiff Khalil admits the requested warranty repair "was able [to] redress" the suspension problem. (*Id.* ¶ 86.) And, it was not until more than two years later, after the expiration of the warranty period, that Plaintiff Khalil requested his next repair. (*Id.* ¶ 87.) As it currently stands, the FAC does not show how Plaintiff Khalil was either refused a repair or that "repeated repair attempts" were unsuccessful. The Court also **DISMISSES** this claim, and **GRANTS** Plaintiff Khalil **LEAVE TO AMEND** to cure the aforementioned deficiencies.

### 3.     Plaintiff Preiss (Alaska)

Next, Plaintiff Preiss owns a 2011 Ford F-250, purchased from an authorized Ford dealership located in Anchorage, Alaska. (*Id.* ¶ 26.) Plaintiff Preiss first experienced the shaking issues when the truck had less than 15,000 miles on the odometer. (*Id.* ¶ 30.) Soon thereafter, Plaintiff Preiss presented the Vehicle to a Ford dealership for an inspection and to redress the problem with the shaking. (*Id.*) The technicians represented to Plaintiff Preiss that the "Death Wobble" was the result of under-inflated tires. (*Id.*) Presently, Plaintiff Preiss experiences the alleged defect anywhere from four to five times a month. (*Id.*) Although Plaintiff Preiss claims the problems persists, there are no allegations that the Vehicle was ever brought back for more repairs. Plaintiff Preiss raises for the first time in the opposition brief that when he brought his Vehicle into the dealership, technicians explained that the "Death Wobble" did not result from a defect and was not subject to recall. (Doc. No. 21 at 17–18.) However, "[a] Complaint cannot be amended through

6

allegations made in an opposition to a motion to dismiss." *Remington v. Mathson*, 42 F. Supp. 3d 1256, 1278 n.3 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014). Accordingly, the Court cannot consider these new facts outside of the FAC. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Therefore, the FAC does not explain how Plaintiff Preiss was either refused a repair or that "repeated repair attempts" were unsuccessful. The Court **DISMISSES** this claim, and **GRANTS** Plaintiff Preiss **LEAVE TO AMEND** to cure the deficiencies stated herein.

### 4.   Plaintiff Jensen (Florida)

Plaintiff Jensen owns a 2005 Ford F-250. (*Id.* ¶ 62.) Plaintiff Jensen first experienced the alleged shaking defect when the "Vehicle had less than 30,000 miles on the odometer." (*Id.* ¶ 66.) On or around August 20, 2007, Plaintiff presented the Vehicle to Ford of Claremont for inspection. (*Id.*) Claremont Ford's technicians attempted to remedy the defect but Plaintiff Jensen alleges that none of the repairs solved the problem. (*Id.*) Following the repairs, Plaintiff Jensen made several complaints to Claremont Ford about the existence of the defect. (*Id.* ¶ 67.) However, Defendant Ford, and Claremont Ford, denied that the problem stemmed from any defect. (*Id.*)

The problem with Plaintiff Jensen's claim, however, is that it is time-barred. Florida provides a five-year statute of limitations for breach of express warranty claims. *See* Fla. Stat. § 95.11(2)(b); *Speier–Roche v. Volkswagen Group of America, Inc.*, No. 14–20107, 2014 WL 1745050, *1 (S.D. Fla. April 30, 2014). Plaintiff Jensen's claim was not filed until twelve years after Plaintiff Jensen presented her Vehicle to Ford in 2007 and was aware that Ford could not remedy the issues. Therefore, Plaintiff Jensen's express warranty claim must be **DISMISSED WITHOUT LEAVE TO AMEND** as time-barred.

### 5.   Plaintiff Morris (Nevada)

Plaintiff Morris owns a 2017 Ford F-350. (*Id.* ¶ 70.) Plaintiff Morris first experienced

7

the defect when the Vehicle had less than 7,000 miles on the odometer. (*Id.* ¶ 73.) On January 31, 2019, Plaintiff Morris presented the Vehicle to Capital Ford for a multi-point inspection. (*Id.*) It was determined there that the defect stemmed from a "dead spot" on the steering dampener and Capital Ford's technicians replaced the truck's steering dampener under warranty. (*Id.*) This failed to resolve the Death Wobble from occurring again, and the defect recurred six months later. (*Id.* ¶ 74.) The Vehicle was repaired yet again, but the repairs did not resolve the issues. Thus, construing the allegations in the FAC in the light most favorable to Plaintiff Morris, the Court determines that there are enough allegations in the FAC to state a plausible claim for breach of express warranty given the multiple failed attempts at remedying the alleged defect. Thus, Ford's motion to dismiss this claim is **DENIED**.

### 6.     Unconscionability

Ford argues these express warranty claims cannot be saved by Plaintiffs' arguments that Ford's Limited Warranty is unconscionable under Alaska, California, Florida, Nevada, and Texas law. (Doc. No. 17-1 at 20.) In response, Plaintiffs argue the Limited Warranty is indeed unconscionable because Ford continues to issue the warranty with a durational limit even though it manufactures the Vehicles with a defect "Ford not only knows about, but that it knows is very likely to occur (and recur) outside of the warranty period." (Doc. No. 21 at 19.)

#### a)     Alaska, California, Florida, Nevada, and Texas Unconscionability Law

Under California, Florida, Nevada, and Texas law, "both procedural and substantive unconscionability must be present for the contract to be declared unenforceable." *Aron v. U–Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808 (2006); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005).[1] A contract or contractual clause is invalid as

---

[1] Because the unconscionability law is the generally the same in California, Florida, Nevada, and Texas, the Court cites to only California law on unconscionability.

unconscionable only if both elements are present, "although the degree to which each must exist may vary." *Aron*, 143 Cal. App. 4th at 808. Procedural unconscionability exists when a contract reflects "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Seifi v. Mercedes-Benz USA, LLC*, 2013 WL 2285339, at *4 (N.D. Cal. May 23, 2013) (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create "'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Seifi*, 2013 WL 2285339, at *5 (citing *Aron*, 143 Cal. App. 4th at 808).

Plaintiffs allege that given Ford's awareness of these defects, the durational limits of the warranty are unconscionable. (Doc. No. 21 at 20.) However, California courts have rejected the exact argument Plaintiffs now make. *See Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2018 WL 1473085, at *7 (N.D. Cal. Mar. 26, 2018) ("[E]ven a manufacturer's awareness of a latent defect cannot make an express warranty's duration unconscionable."). For example, in *Seifi*, the court held that even accepting as true the plaintiffs' allegation that the car manufacturer knew about the car's defective gears, plaintiffs failed to sufficiently allege that the warranty durational limits (i.e., either 48 months or 50,000 miles) were unconscionable since these limits did not "on their face shock the conscience." *Seifi*, 2013 WL 2285339, at *5.

In any event, any argument of procedural unconscionability is unavailing based on these facts. Plaintiffs here have not alleged that the manufacturer failed to offer any extended warranty options. *See Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 994 (N.D. Cal. 2010) *aff'd*, 462 F. App'x 660 (9th Cir. 2011) (procedural unconscionability is not established if the manufacturer offered extended warranty options). Nor have Plaintiffs alleged that they and other class members had no meaningful alternatives in the form of other vehicles that they could have selected. *See Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 771 (1989) (noting the existence "of meaningful alternatives available to such contracting party in the form of other sources of supply tends to defeat

9

any claim of unconscionability.").

Any argument as to substantive unconscionability fares no better. California courts have held that "a three-year, 36,000 mile warranty does not, on its face, create one-sided results." *Fisher v. Honda N. Am., Inc.*, No. LA CV13-09285 JAK, 2014 WL 2808188, at *9 (C.D. Cal. June 12, 2014); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 975 (N.D. Cal. 2018) (rejecting argument that a Ford 3–year/36,000 mile coverage period was unconscionable). Thus, nothing about the Limited Warranty strikes this Court as "overly harsh" or "one-sided" under California, Florida, Nevada, and Texas law.

### b)    Alaska Law

Likewise, Plaintiffs cannot establish unconscionability under Alaska law. Under Alaska law, a contract term may be unconscionable "where . . . circumstances indicate a vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party." *Municipality of Anchorage v. Locker*, 723 P.2d 1261, 1265–66 (Alaska 1986). But for the same reasons Ford's Limited Warranty is not unconscionable under California, Florida, Nevada, and Texas law, under Alaska law, the FAC does not allege any "unreasonable terms" when Plaintiff Preiss purchased his Vehicle.

The FAC simply does not allege any facts showing that Ford's Limited Warranty is unconscionable. Therefore, Plaintiffs' claim of unconscionability fails and the terms of the warranty control.

\* \* \*

In sum, the Court **DISMISSES** California Count IV, Alaska Count III, and Texas Count III (as to Plaintiff Khalil) **WITH LEAVE TO AMEND**.

### 7.    Pre-Suit Notice

Next Ford asserts that the express warranty claims of Plaintiffs Jensen (FL), Vinson (GA), Bittner (TX), and Khalil (TX) fail for the additional, independent reason that "the FAC does not allege that they provided Ford with the required individualized pre-suit notice of the alleged breach of express warranty." (Doc. No. 17-1 at 22.)

Pursuant to Florida, Texas, and Georgia law, a buyer need only allege that the seller

10

received some form of notice of a breach of express warranty claim; issues regarding the timeliness and sufficiency of the notice are questions fact. *See Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983) ("Where the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact."); *see also Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL 4572799, at *13 (S.D. Tex. Sept. 20, 2019) (holding that a general expression of the buyer's dissatisfaction with the product may be sufficient to satisfy Texas's pre-suit notice requirement at the pleading stage); *Martinelli Ginetto SpA v. Sample Dyeing Serv., Inc.*, No. 4:09-CV-0046-HLM, 2010 WL 11505451, at *12 (N.D. Ga. Jan. 12, 2010) ("As the Georgia Court of Appeals noted . . ., the issue of reasonableness of notice is ordinarily for the factfinder.").

The Court finds that these four Plaintiffs' express warranty claims survive this challenge. Here, Plaintiffs brought their trucks to Ford dealerships on several occasions for repairs to address their problems. (FAC ¶¶ 54–59, 66–67, 80, 86–87.) Furthermore, Plaintiff Vinson alleges he directly contacted Ford's customer service line after his experience. (FAC ¶ 55.) At this early stage of the proceedings, these alleged communications suffice as allegations of notice. If this case proceeds, Plaintiffs will have the burden of proving that they actually provided notice as required by state law.

## B.   Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") Claim

### 1.   Informal Dispute Resolution Requirement

Ford next argues Plaintiffs' MMWA claim should be dismissed because they have not complied with the statute's exhaustion requirement for informal dispute resolution. (Doc. No. 17-1 at 23.) Plaintiffs do not provide any opposition to this argument.

The MMWA "encourage[s] warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). If the warrantor establishes such a procedure, the procedure meets certain requirements established by the Federal Trade Commission, and the warrantor "incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such

11

warranty," then "a class of consumers may not proceed in a class action except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the named plaintiffs (upon notifying the defendant that they are named plaintiffs in a class action with respect to a warranty obligation) initially resort to such procedure." 15 U.S.C. § 2310(a)(3). "[F]ailure to participate in [the warrantor's] informal dispute settlement procedure is an affirmative defense–subject to waiver, tolling, and estoppel, that [the warrantor] may raise, not that Plaintiff must negate in [his or] her Complaint." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040, 1042, 1043 n.4 (9th Cir. 2011) (holding that § 2310(a) is a prudential, not a jurisdictional bar to filing an MMWA claim and that failure to exhaust under § 2310(a) is an affirmative defense).

Here, Ford's Limited Warranty contains a dispute resolution mechanism: "You are required to submit your warranty dispute to the BBB AUTO LINE before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act." (Doc. No. 17-5, Ex. C at 14.) The FAC contains no allegations about the BBB AUTO LINE or any other informal dispute resolution procedure. However, at this juncture, Plaintiffs are not required to negate anticipated affirmative defenses in their complaint. Thus, Ford may assert its affirmative defenses later on in the litigation. For now, the Court **DENIES** Ford's request to dismiss Plaintiffs' MMWA claim on this ground.

### 2. Ford's Motion to Dismiss or Strike Plaintiffs' MMWA Nationwide Claim

Ford asks the Court to dismiss or strike under Rule 12(f) Plaintiffs' nationwide MMWA class claim and other nationwide class claims under California law. Ford, relying on *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), challenge Plaintiffs' efforts to assert claims under state law on behalf of a nationwide class. In *Mazza*, the Ninth Circuit held that the district court "abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws." 666 F.3d at 590.

Although Plaintiffs contend that the Court should defer assessing the viability of the nationwide class until the class certification stage, many district courts have applied *Mazza* at the pleading stage. *See, e.g., Glenn v. Hyundai Motor Am.*, SACV 15-2052 DOC (KESx), 2016 WL 3621280, at *5 (C.D. Cal. June 24, 2016) ("The Court notes that while *Mazza* was decided at the class certification stage, the decision 'applies generally and is instructive when addressing a motion to dismiss.'") (quoting *Frezza v. Google, Inc.*, CV 5:12-237 RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013)). Applying the *Mazza* principles and California's choice-of-law analysis to the facts of this case, it is readily apparent that Plaintiffs' claims based on California's consumer protections laws cannot support a viable nationwide class. The Court therefore **STRIKES** the nationwide class claims based on California's consumer protection laws.

As to the MMWA nationwide claim, whether a warrantor has committed a breach under the MMWA is governed by state law. *See Clemens*, 534 F.3d at 1022. Here, it is unclear which state's warranty law Plaintiffs seek to apply to the nationwide MMWA class claim. Thus, the Court **DISMISSES** Plaintiffs' MMWA nationwide claim **WITH LEAVE TO AMEND** to address this deficiency.

### C.     Plaintiffs' Implied Warranty Claims

Next, Ford asserts various arguments explaining why the Court should dismiss Plaintiffs' breach of implied warranty claims. In particular, Ford argues (1) Plaintiffs' claims fail as a matter of law because the Class Vehicles are fit for their ordinary purpose, (2) Plaintiffs' lack of privity bars their California, Connecticut, Florida, and Georgia implied warranty claims, (3) Plaintiffs failed to provide pre-suit notice of the implied warranty claims, and (4) the statute of limitations bars Plaintiff Lessin's implied warranty claim under California law.

#### 1.     Whether Plaintiffs' Vehicles Are Fit For Their Ordinary Purpose

Ford argues Plaintiffs' implied warranty claims fail because under the California Song-Beverly Act, and under Alaska, California, Connecticut, Florida, Georgia, Nevada, and Texas common law, Plaintiffs' Class Vehicles are fit for their ordinary purpose—

13

namely, Plaintiffs have driven, and still drive their vehicles. (Doc. No. 17-1 at 24.) In opposition, Plaintiffs assert that an implied warranty of merchantability may be breached even if a vehicle is technically operable, because it may still be unsafe and dangerous to drive. (Doc. No. 21 at 22–24.) The Court agrees with Plaintiffs.

Dismissal under Rule 12(b)(6) on this basis is not warranted. The ordinary purpose of a car is not simply to provide transportation but rather, safe and reliable transportation. *See, e.g., Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose."). Here, it is a question of fact as to whether the alleged shaking issues posed enough of a safety risk that the Vehicles could not be said to provide safe, reliable transportation. Thus, at this early stage, the Court may not conclude whether the Vehicles are fit for their ordinary purpose. *See, e.g., Barakezyan v. BMW of N. Am.*, 715 F. App'x 762, 763 (9th Cir. 2018) (holding that plaintiff had plausibly plead a safety hazard when he alleged that his vehicle emitted loud, long, high-pitched noise that distracted him, other drivers, and nearby pedestrians); *Aguilar v. Gen. Motors, LLC*, No. 13–cv–00437–LJO–GS, 2013 WL 5670888, at *7 (E.D. Cal. Oct. 16, 2013) (taking note of plaintiff's allegation that a steering defect could "result in potential failure of power steering, pulling to the left and right, and loss of steering control during the normal course of driving[;] [s]uch a defect would render a vehicle unfit for driving"). The motion is **DENIED** as to this ground.

### 2.    Whether Lack of Privity Bars Plaintiffs' California, Connecticut, Florida, and Georgia Implied Warranty Claims

Next, Ford argues that the common law implied warranty claims of Plaintiffs Lessin (CA), Farlekas (CT), Jensen (FL), and Vinson (GA) all fail because state law requires contractual privity between a plaintiff and Ford. (Doc. No. 17-1 at 26.) Ford argues that the aforementioned plaintiffs did not purchase their Vehicles from Ford but instead from various dealerships. (*Id.*)

14

As a preliminary matter, Plaintiffs do not dispute that Plaintiff Farlekas (CT) and Plaintiff Jensen (FL) lack privity required for their implied warranty claims because they did not purchase their Vehicles from Ford. *See Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1117 (S.D. Fla. 2019) ("Consistent with Florida law, and this Court's application thereof, because Plaintiffs did not purchase their used vehicles directly from Porsche, they lack contractual privity with Porsche and their implied warranty claim necessarily fails as a matter of law."); *Kahn v. Volkswagen of Am., Inc.*, No. FSTCV075004090S, 2008 WL 590469, at *9 (Conn. Super. Ct. Feb. 13, 2008) (lessor of vehicle not in privity with manufacturer). As such, the Court **GRANTS** Ford's motion to dismiss Plaintiffs Farlekas (CT) and Plaintiff Jensen's (FL) implied warranty claims.

The next question is whether Plaintiffs Lessin (CA) and Vinson's (GA) claims survive. As to Plaintiff Lessin's claim, under California law, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). A buyer and seller stand in privity if they are adjoining links of the distribution claim. *Id.* (citing *Osborne v. Subaru of Am., Inc.*, 243 Cal. Rptr. 815, 820 n.6 (Ct. App. 1988)). Accordingly, an end consumer who buys from a retailer, rather than directly from the manufacturer, is not in privity with the manufacturer. *Id.* Here, Plaintiff Lessin does not dispute that he lacks privity with Ford but instead argues the third-party beneficiary exception provides that a consumer may assert an implied warranty claim as a third-party beneficiary of agreements between the manufacturer and the retailer. (Doc. No. 21 at 24–25.) In reply, Ford relies on *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) to argue that California does not apply a third-party beneficiary exception to the privity requirement.

However, the Ninth Circuit in *Clemens* did not expressly address the third-party beneficiary exception, but rather, dismissed an implied warranty claim for lack of privity, noting that "California courts have painstakingly established the scope of the privity requirement under California Commercial Code [§] 2314, and a federal court sitting in diversity is not free to create new exceptions to it." 534 F.3d 1017, 1024; *In re MyFord*

15

*Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) ("Although *Clemens*, like this case, involved a plaintiff who bought a car from a dealership and then sued the manufacturer for a defect with the car, it is not clear whether the plaintiff argued for application of the third-party beneficiary exception specifically."). Following *Clemens*, "California district courts are split on the application of the third party beneficiary exception to the rule of privity." *Snyder v. TAMKO Bldg. Prod., Inc.*, No. 1:15-CV-01892-TLN-KJN, 2019 WL 4747950, at *7 (E.D. Cal. Sept. 30, 2019) (citations omitted). "Some courts have declined to recognize the third-party beneficiary exception because *Clemens* did not expressly recognize it and refused to create any new exceptions to privity." *Bhatt v. Mercedes-Benz USA, LLC*, No. CV 16-03171-TJH (RAOx), 2018 WL 5094932, at *2–3 (C.D. Cal. Apr. 16, 2018) (citations omitted). But "the clear weight of authority compels a conclusion that where plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty claim." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010) (citations omitted).

Here, the Court joins with many other courts in the Ninth Circuit concluding that where a plaintiff sufficiently pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the warranty's breach. Having reached this conclusion, the Court moves to determine whether Plaintiffs Lessin and Vinson may assert their claims despite a lack of privity. Plaintiff Lessin alleges he purchased his Vehicle "new from Mossy Ford—an authorized Ford dealership located in Poway, California." (FAC ¶ 18.)  However, short of this allegation, there are no additional facts in the FAC tending to support that Plaintiff Lessin is a third-party beneficiary to a contract that gives rise to the implied warranty. *See Shamamyan v. FCA US LLC*, No. CV195422DMGFFMX, 2020 WL 3643481, at *6 (C.D. Cal. Apr. 1, 2020) ("[E]ven courts that apply the third-party beneficiary exception in the implied warranty context require that a plaintiff plead more than the legal conclusion that they purchased a vehicle from a manufacturer's 'authorized agent' to establish third-party

16

beneficiary status.”). Thus, Plaintiff Lessin’s claim is **DISMISSED, WITH LEAVE TO AMEND** to address this deficiency.

Turning to the Plaintiff Vinson’s claim under Georgia law, Georgia law generally requires direct privity between the seller and buyer of goods for the implied warranty of merchantability to apply. *See Keaton v. A.B.C. Drug Co.*, 266 Ga. 385, 467 S.E.2d 558, 560–61 (1996). Privity exists between a buyer and manufacturer if the manufacturer extends an express warranty to the buyer. *See Chrysler Corp. v. Wilson Plumbing Co., Inc.*, 132 Ga. App. 435, 208 S.E.2d 321, 323 (1974) (“However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists.”). In this case, because Plaintiffs have alleged that Ford provided a Limited Warranty, Plaintiff Vinson can proceed with his breach of implied warranty claim despite failing to allege contractual privity between him and Ford. *See Chrysler Corp.*, 208 S.E.2d at 323; *see also McQueen v. Minolta Bus. Sols., Inc.*, 620 S.E.2d 391, 393 (Ga. App. Ct. 2005) (indicating continued approval of *Chrysler’s* rule). Accordingly, the Court **DENIES** Ford’s motion to dismiss Plaintiff Vinson’s claim for breach of implied warranty of merchantability.

### 3.    Pre-Suit Notice

Ford argues the implied warranty claims of Plaintiffs Farlekas (CT), Jensen (FL), Vinson (GA), Bittner (TX), and Khalil (TX) fail because they do not allege they provided Ford pre-suit notice of an alleged breach of implied warranty. (Doc. No. 17-1 at 28.) This argument fails for the same reasons as noted above by the Court regarding pre-suit notice for the breach of express warranty claims. (*See* Part III.A.7.) As such, Ford’s motion to dismiss is **DENIED** as to this argument.

### 4.    The Statute of Limitations As To Plaintiff Lessin’s Implied Warranty Claim Under California Law

Ford also moves to dismiss Plaintiff Lessin’s (CA) implied warranty claims under the Song-Beverly Act and the California Commercial Code as time-barred. (Doc. No. 17-

17

1 at 28.) Plaintiff Lessin does not advance an argument in response. The Court agrees with Ford. Under California law, the statute of limitations to bring an implied warranty claim under both the Song-Beverly Act and the California Commercial Code is four years after tender of delivery of the product. *See Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1305–06 (2009) ("California courts have held that the statute of limitations for an action for breach of warranty under the Song–Beverly Act is governed by the same statute that governs the statute of limitations for warranties arising under the Uniform Commercial Code: section 2725 of the Uniform Commercial Code."). Because Plaintiff Lessin purchased his F-250 in July 2010 and did not bring his implied warranty claims until June 2019, Plaintiff Lessin's implied warranty claim is clearly time-barred. (Doc. No. 17-1 at 29.) Ford's motion to dismiss Plaintiff Lessin's implied warranty claims under California law is **GRANTED**.

### D.    Plaintiffs' Fraud-Based Claims

Lastly, the Court addresses whether Plaintiffs have adequately pled their fraud claims based on state law. The fraud-based claims are either claims for fraudulent concealment (common law) or claims for fraud based on a state consumer protection statute. With respect to the fraud claims, Ford makes the following arguments: (1) that Plaintiffs have failed to plead with sufficient particularity any affirmative misrepresentation by Ford, and that Plaintiffs have not alleged Ford knew a material fact about their Vehicles that it failed to disclose before Plaintiffs' purchases; (2) that the Alaska, Connecticut, and Florida consumer protection claims are time-barred; and (3) that certain state claims fail for individualized reasons. The Court will address each argument in turn.

### 1.    Whether Plaintiffs Have Sufficiently Alleged Ford's Failure to Disclose

To start, Plaintiffs concede their theory for their fraud-based claims is not based on affirmative statements, but instead on an omissions-based theory that: (1) Ford failed to disclose that the Vehicles are subject to a dangerous latent suspension defect; and (2) Ford

18

actively concealed the defect by misrepresenting the cause of the symptoms it manifests. (Doc. No. 21 at 27.)

As a preliminary matter, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), allegations of fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). As applied to Plaintiffs' claim for fraud, a fraud by omission or fraud by concealment claim "can succeed without the same level of specificity required by a normal fraud claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). When a claim rests on allegations of fraudulent omission, the Rule 9(b) standard is somewhat relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (internal citations omitted). Nonetheless, a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("The Ninth Circuit has recently clarified that claims of nondisclosure and omission, as varieties of misrepresentations, are subject to the pleading standards of Rule 9(b)")). As such Plaintiffs are still required to plead the "what," "why," and "how" to establish a claim based on fraud. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1190 (C.D. Cal. 2010).

Turning to the substance, the dispute distills down to whether Plaintiffs adequately alleged Ford knew a material fact about their vehicles that it failed to disclose before Plaintiffs' purchases. Pursuant to Alaska, Arizona, California, Connecticut, Florida, Georgia, Nevada, and Texas law, a party cannot have a duty to disclose facts that it did not know, and a party is only obligated to disclose known facts material to a consumer's purchase decision. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). The gravamen of Ford's argument is that Plaintiffs have not pled facts showing that at the time of each of their purchases, Ford had knowledge of a specific material fact

19

establishing a suspension defect in the relevant Class Vehicle. (Doc. No. 17-1 at 33–34.) Specifically, Ford argues its internal records are too speculative and vague to support an inference of knowledge. (*Id.* at 34.) Additionally, Ford contends the thousands of consumer complaints filed with the National Highway Traffic Safety Administration ("NHTSA") cannot establish Ford's knowledge of an alleged defect because the complaints by other drivers were either submitted after each plaintiff's purchase date or involved older vehicle models that did not share the same design. (Doc. No. 17-1 at 34.) In opposition, Plaintiffs argue that Ford conflates factual matters of causation and proof with the lower pleading standard requiring only that Plaintiffs plead Ford's knowledge of potential defects. (Doc. No. 21 at 34.)

With Rule 12 and Rule 9(b) in mind, the Court concludes Plaintiffs have pled enough to survive Ford's motion to dismiss Plaintiffs' fraud-based claims. It would strain credulity to say that Plaintiffs have not pled knowledge on the part of Ford when from March 10, 2005 to February 6, 2019, a staggering 1,265 consumer complaints were submitted to the NHTSA with consumers experiencing the alleged violent shaking defect of their Vehicles. (FAC ¶ 97.) Ford argues Plaintiffs improperly lump together complaints from 15 different model years. (Doc. No. 23 at 18.) Thus, Ford seeks for the Court to focus on each individual model year. Specifically, for example, Ford argues Plaintiffs Farlekas (CT) and Jensen (FL) purchased a Model Year 2005 vehicle new, but yet only one of the cited NHTSA complaints were submitted in 2005 on December 6. (Doc. No. 17-1 at 36.) As another example, Ford argues Plaintiffs Morris (NV) and Bittner (TX) presumably purchased their new Model Year 2017 vehicles in 2017, while the first cited complaint were not submitted until 2018. Ford also asserts that the relevant vehicles "underwent numerous redesigns" through the years and so, Plaintiffs cannot rely on any post-purchase complaints. (Doc. No. 17-1 at 35.)

It is true that generally post-purchase complaints cannot serve as a basis for the inference of a defendant's knowledge about an alleged defect. *See Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *9 (N.D. Cal. July 7, 2015). Thus, the

20

Court agrees that Plaintiffs Farlekas (CT) and Jensen's (FL) fraud-based claims fail. But for the other Plaintiffs, Plaintiffs are not alleging that the NHTSA complaints themselves prove that the Vehicles are defective. Instead, the NHTSA complaints—as a whole—suggests Ford would have at least some knowledge of the alleged defect. Furthermore, at this juncture of the litigation, Ford's contention about its redesigns are not enough to warrant dismissal of the fraud-based claims. Construing the pleadings in a light most favorable to Plaintiffs, the redesigns do not necessarily indicate that Ford was unaware of the alleged defect, and could also plausibly support the inference that Ford was aware that problems existed in its vehicles. *See, e.g, Falco v. Nissan N. Am., Inc.*, No. CV 13–00686 DDP (MANx), 2013 WL 5575065, at *6–7 (C.D. Cal. Oct. 10, 2013) (stating that, where defendant issued the first of several TSBs in July 2007 and further did a redesign in 2006 or 2007, that "permit[s] plausible inferences that [defendant] was aware of the defect at the time they sold the vehicles in 2005 and 2006").

Furthermore, Plaintiffs do not rest their theory of knowledge on just the NHTSA complaints alone. In addition to the NHTSA complaints, Plaintiffs point to (1) Ford's own records of customers' complaints, (2) dealership repair records, (3) warranty and post-warranty claims, and (4) pre-sale durability testing and part sales as grounds to infer knowledge. (FAC ¶ 102.) For example, Plaintiffs highlight a Technical Service Bulletin ("TSB") issued by Ford on June 17, 2011, which stated that "some 2011 F-250, F-350, and F-450 vehicles equipped with 4x4 and built 2/5/2010 through 8/1/2010 may exhibit a steering wheel oscillation after hitting rough pavement or an expansion joint during a slight left turn 50-55 mph." (FAC ¶ 117.) Therefore, Plaintiffs' allegations are sufficient to plausibly allege that Ford had knowledge of the shaking defect at the time of Plaintiffs' purchases of their Vehicles. *See Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *10 (N.D. Cal. July 7, 2015) ("Here, California Plaintiffs' allegations, which include internal testing, dated internal communications, dated customer complaints, and dated TSBs, are sufficient to plausibly allege that Ford had knowledge of the EPAS system defect at the time California Plaintiffs purchased their vehicles."); *MacDonald v.*

21

*Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) (identifying "a number of facts" that support plaintiffs' knowledge allegations, including internal data, NHTSA complaints, and TSBs).

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Ford's motion to dismiss Plaintiffs' fraud-based claims.

### 2.      Alaska, Connecticut, and Florida Consumer Protection Claims

Ford next argues Plaintiffs' Alaska, Connecticut, and Florida consumer protection claims are barred by the state's respective statute of limitations. (Doc. No. 17-1 at 38.) First, Plaintiff Farlekas's Connecticut Unfair Trade Practices Act ("CUTPA") claim is time-barred because a CUTPA claim must be brought within "three years of the occurrence of a violation." *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 216, 541 A.2d 472, 477 (1988). Plaintiff Farlekas purchased a 2005 F-250 new but did not file suit until fourteen years later in September 2019. (Doc. No. 17-1 at 38.) Plaintiff Farlekas does not dispute this. As such, Plaintiff Farlekas's CUTPA claim is **DISMISSED WITHOUT LEAVE TO AMEND** as time-barred.

Second, the statute of limitations for bringing an Alaska consumer protection claim is "two years after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful." Alaska Stat. § 45.50.5321(f). Plaintiff Preiss (AL) purchased a 2011 truck and experienced issues under warranty. Ford points out because Ford's Limited Warranty extends for a maximum of three years, Plaintiff Preiss's claim arose by 2014. Plaintiff Preiss argues that under Alaska law, the statute of limitations period is tolled for consumer protection claims with fraudulent concealment allegations. However, the Alaska UTPA statute of limitations begins to run "when [plaintiff] purchased the vehicle" and Alaska authority cited by Plaintiff Preiss states that it is "immaterial" when a plaintiff discovered the alleged unlawful business practice. *See Weimer v. Cont'l Car & Truck LLC*, 237 P.3d 610, 615 (Alaska 2010). Accordingly, the Court finds that Plaintiff Preiss's consumer protection claim is time-barred.

Third, a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim is to

be brought within four years, and accrues "at the time of purchase or lease of a product, not upon discovery of an alleged defect." Fla. Stat. § 95.11(3)(f). While Plaintiff Jensen does not provide the date of when she purchased her 2005 Model Year, it is likely she purchased it no later than August 2007, the date of when she presented the car for the first repair. (FAC ¶¶ 62, 66.) However, she did not file suit until September 2019—at least twelve years after her purchase. Her claim is therefore time-barred as well.

Accordingly, the Alaska, Connecticut, and Florida consumer protection claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

### 3.    Plaintiff Snodgrass's Consumer Fraud Act Claim

Ford seeks to have Plaintiff Snodgrass's Arizona Consumer Fraud Act claim dismissed because Arizona does not recognize a cause of action for "subsequent purchasers" like Plaintiff Snodgrass. Ford points out Plaintiff Snodgrass purchased a used 2014 F-230 in June 2019, (FAC ¶ 33), and thus, she is not the "original consumer purchaser." (Doc. No. 17-1 at 38.) Plaintiff Snodgrass responds that the subsequent purchaser doctrine does not prohibit a purchaser from bringing suit against a manufacturer whose misrepresentations proximately caused the alleged injuries. (Doc. No. 21 at 38–39.) However, Plaintiffs have already conceded that their fraud-based claims are not based on affirmative misrepresentations, but instead on the failure to disclose. Thus, Plaintiff Snodgrass's consumer fraud claim fails and must be **DISMISSED**.

### 4.    California & Georgia Equitable Claims

Ford next attacks the California and Georgia equitable claims under California's UCL and FAL, and Georgia's UDTPA because Plaintiffs cannot recover equitable remedies permitted under those laws without demonstrating that they lack any legal remedy. (Doc. No. 17-1 at 39.) Plaintiffs disagree, contending that those equitable claims survive when a plaintiff alleges a specific equitable remedy that cannot be obtained through legal remedies—even where plaintiffs had other legal claims and potential legal remedies. (Doc. No. 21 at 37.) Plaintiffs argue the equitable remedies they seek under state law are

23

different than the restitution they seek for breach of warranty because Ford was able to overcharge for its vehicles by concealing information. (*Id.*)

Several district courts have held that a plaintiff may not seek equitable remedies under these consumer protection laws when an adequate remedy at law is available. *See, e.g., Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *16–17 (N.D. Cal. July 7, 2015) (dismissing UCL claim and CLRA claim for injunctive relief because plaintiffs had adequate remedy at law in the form of their claim for fraudulent concealment and complaint contained no allegations of inadequate legal remedy). Here, Plaintiffs are already seeking legal damages on their other claims for breach of warranty, and do not explain how these damages would somehow be inadequate. As such, the Court agrees with Ford and **DISMISSES** Plaintiffs' UCL and FAL, and Georgia's UDTPA claims **WITHOUT LEAVE TO AMEND**.

### 5.    Georgia Fair Business Practices Act ("FBPA") Claims

Finally, Ford moves to dismiss Plaintiffs' class-wide Georgia FBPA claim. (Doc. No. 17-1 at 40.) Ford argues that under Georgia law, the claim cannot be asserted on behalf of a class, and that this substantive prohibition is not displaced by Federal Rule of Civil Procedure 23. (*Id.*) Plaintiffs cite Eleventh Circuit authority holding that Rule 23 displaces Alabama's Deceptive Trade Practices Act's prohibition on class claims. (Doc. No. 21 at 39 (citing *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335–37 (11th Cir. 2015)).)

Generally, class actions may continue even if a state consumer protection statute precludes them, so long as applying Rule 23 does not abridge, enlarge or modify any substantive right. *See Shady Grove Orthopedic Assocs.*, *P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Under the controlling *Shady Grove* opinion, the inquiry is on whether the state law had a substantive purpose. While a state law rule may be procedural, it may be so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy, and should not be preempted by a conflicting federal rule. *See Shady Grove*, 559 U.S. at 420. Having considered the relevant authority, the Court declines to

24

follow Plaintiffs' cited case law regarding the inapposite Alabama consumer protection law. Instead, the Court will join with numerous other district courts, which have found that the class action prohibition in Georgia's FBPA is substantive, and thus not displaced by Rule 23. *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 798 (E.D. Mich. 2019) ("Applying this approach, this Court finds that the class action prohibitions set forth in the GFBPA and TCPA define the scope of the state-created rights and are therefore substantive and not displaced by Rule 23."); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13CV4427NGGST, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (finding that the class action bar in the Georgia consumer protection statute demonstrates a "substantive policy choice . . . to limit not only the form of the action but also the remedies available," such that they apply over Rule 23); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (holding that "[p]laintiffs cannot maintain a class action as to the alleged consumer-protection statutory violations in [] Georgia" because their statutory prohibitions of class actions define the scope of the state-created rights and are therefore substantive in nature). Therefore, Plaintiffs cannot maintain their class action under the Georgia FBPA. The Court **GRANTS** Ford's motion on this basis and **DISMISSES** Plaintiffs' class claims under the Georgia FBPA.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Ford's motion to dismiss Plaintiffs' FAC. (Doc. No. 17.) Should Plaintiffs choose to do so, where leave is granted, they must file an amended complaint curing the deficiencies noted herein within **21 days** of this Order.

**IT IS SO ORDERED.**

Dated:  November 5, 2020

Hon. Anthony J. Battaglia
United States District Judge