1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LESSIN, CAROL SMALLEY, et al., on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>                                    Defendant. | Case No.:  3:19-cv-01082-AJB-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 35)** |

Presently pending before the Court is Defendant Ford Motor Company's ("Ford") motion to dismiss the Consolidated Amended Complaint ("CAC") or in the alternative, to strike the nationwide class allegations. (Doc. No. 35.) The motion is fully briefed, (Doc. Nos. 38–39), and the matter is suitable for determination on the papers. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss.

I.    **BACKGROUND**

This matter involves alleged latent defects—which Plaintiffs refer to as the "Death Wobble"—in Ford's F-250 and F-350 trucks ("the Vehicles"). Plaintiffs allege this defect causes abnormal and premature wearing and/or loosening of the suspension parts, and results in "violent shaking," causing drivers to lose control of the Vehicles, and difficulty

steering during their operation under normal driving conditions or speeds. (CAC ¶¶ 2–3.)

The Complaint was first filed in June 2019, (Doc. No. 1), and Ford moved to dismiss on August 1, 2019, (Doc. No. 8). Plaintiffs filed a First Amended Complaint ("FAC") on September 3, 2019, which mooted out Ford's motion. (Doc. No. 11.) Ford then filed a second motion to dismiss the FAC, which the Court granted in part and denied in part. (Doc. No. 30). Then, on December 18, 2020, Plaintiffs filed the CAC, (Doc. No. 33). Ford now moves to dismiss the CAC.

Of the previous set of plaintiffs in the FAC, only one former plaintiff (Lessin) survives. He is now joined by 13 new plaintiffs from 10 different states, asserting 36 claims for breach of warranty (express and implied), fraudulent concealment, and violation of various state consumer fraud statutes related to a purported suspension defect in new and used F-250 and F-350 trucks. They allege that each Plaintiff spoke with "one or more [Ford dealership] sales representatives . . . regarding the various features, benefits, and attributes" of their vehicles, and relied on those conversations when making their purchase. (*Id.* ¶¶ 19, 28, 45, 53, 66, 74, 83, 91, 100, 109, 116, 128, 140.) Most of these Plaintiffs also allege they relied on the window sticker when making the determination to purchase the Vehicles.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007).

Notwithstanding this deference, the reviewing court need not accept legal

conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### B.    Federal Rule of Civil Procedure 9(b)

A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to make more specific allegations so a defendant "can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1024 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *see also Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993).

## III.   DISCUSSION

Ford seeks dismissal of Plaintiffs' (1) express warranty claims, (2) implied warranty claims, and (3) fraud-based claims. In this order, the Court will address the merits of Ford's request.

### A.    Plaintiffs' Express Warranty Claims

The Court starts with Plaintiffs' express warranty claims. Plaintiffs bring express warranty claims under the Magnuson-Moss Warranty Act ("MMWA"), and the laws of Arizona, California, Colorado, Illinois, Maine, New Mexico, Ohio, South Carolina, and Texas. Ford's theory supporting dismissal of all these claims is based on what it believes to be insufficient facts. (Doc. No. 35-1 at 15.)

Plaintiffs challenge two of Ford's express warranties offered to purchasers of its vehicles: (1) Ford's New Vehicle Bumper-to-Bumper Limited Warranty ("Limited Warranty"), and (2) Ford's Certified Pre-Owned Comprehensive Limited Warranty ("CPO

Warranty"). Ford's Limited Warranty provides "bumper-to-bumper" coverage for new vehicles sold at retail for 3 years or 36,000 miles, whichever occurs first. (Doc. No. 35-4, Ex. B at 8.) It promises to repair, replace, or adjust a covered part only if a vehicle that malfunctions "during normal use during the applicable coverage period" is "taken to a Ford dealership for a warranted repair during the warranty period." (*Id.* at 9.) Ford's CPO Warranty operates as separate manufacturer-backed limited warranty protection for pre-owned or used vehicles that Ford has "certified" for resale by authorized Ford dealers. (CAC ¶ 189.) The CPO Warranty provides "repair or replace" coverage for listed vehicle components for 12 months or 12,000 miles, whichever comes first from the expiration of the Limited Warranty or the date of purchase of the CPO vehicle, whichever comes later. (*Id.* ¶ 190.)

Under Ninth Circuit authority, "[a] repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time." *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984). Ford argues no breach of these warranties occurred because no plaintiff alleges that they were refused a free repair by a Ford dealer, or experienced multiple unsuccessful repair attempts, at any point during which the two warranties applied. (Doc. No. 35-1 at 16.) Ford's arguments can be divided into three challenges, which will be analyzed below: (1) repair attempts outside the warranty period, (2) successful in-warranty repairs, and (3) insufficient allegations of breach. (Doc. No. 35-1 at 16–20.)

### 1. Repair Attempts Outside the Warranty Period

Ford argues that Plaintiff Smalley (California), Plaintiff Hamilton (Maine), and Plaintiff Hahn (Ohio) all do not have express warranty claims because the repair attempts fell outside the applicable express warranty periods.

#### a) Plaintiff Smalley (California)

The Court first analyzes whether Plaintiff Smalley has an express warranty claim. The CAC provides that on approximately March 11, 2012, Ms. Smalley and her husband purchased a "Certified Pre-Owned" 2009 Ford F-250. (CAC ¶ 25.) At the time of purchase,

the Vehicle had 29,309 miles on the odometer and was covered by Ford's Limited Warranty and its CPO Warranty. (*Id.* ¶ 26.) Within the first year of owning the Vehicle, Ms. Smalley allegedly experienced shaking while driving on a highway. (*Id.* ¶ 30.) In the CAC, she states she mentioned the "Death Wobble" during oil changes at Future Ford, but technicians told her nothing was wrong. (*Id.* ¶ 31.) No specific dates are given as to these allegations. In May 2014, with approximately 49,122 miles on the odometer, Ms. Smalley brought the Vehicle back to Future Ford, where technicians performed an alignment and tire rotation.

These allegations are not sufficient to state an express warranty claim. The allegations only assert that Ms. Smalley brought her Vehicle in for repair at 49,122 miles. However, at this mileage, Ms. Smalley's Vehicle would have no longer qualified for coverage under any warranties provided by Ford. The CPO Warranty would have expired when the Vehicle reached 48,000 miles. Thus, her express warranty fails for falling out of the scope of coverage. *See Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Ct. App. 2006) (Courts "have expressly rejected the proposition that a latent defect, discovered outside the limits of a written warranty, may form the basis for a valid express warranty claim if the warrantor knew of the defect at the time of sale"). This claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### b) Plaintiff Hamilton (Maine)

Next comes Plaintiff Hamilton's express warranty claim. On May 30, 2018, Ms. Hamilton purchased a new 2017 Ford F-250. (CAC ¶ 88.) In February 2019, Ms. Hamilton complained about the "Death Wobble" to Al Packer Ford in Palm Beach, Florida while the Vehicle was in for an oil change. At that time, the Vehicle had approximately 28,000 miles on the odometer, and was still covered by the Limited Warranty. According to the service department, they had never heard of the problem and "did not have a solution for the problem." (*Id.* ¶ 92.) On December 7, 2020, Ms. Hamilton presented the Vehicle to Al Packer Ford after experiencing the "Death Wobble" for a second time while driving over a highway overpass. At this time, the Vehicle had 37,257 miles on its odometer, and the

warranty had expired. The technicians at Al Packer Ford were able to verify the "Death Wobble" and replaced the steering damper on Ms. Hamilton's Vehicle. (*Id.* ¶ 93.) Despite repairs to the Vehicle, Ms. Hamilton "still fears that the Death Wobble will reoccur at some point in the near future." (*Id.* ¶ 94.)

These facts are sufficient to state a claim. Ford argues that there are no allegations supporting Ford's refusal to provide a covered repair or replacement. (Doc. No. 35-1 at 17.) However, the CAC provides that while the Vehicle was covered by the Limited Warranty, Ford technicians could not provide a solution for the defect. (CAC ¶ 92.) Construing these facts in a light most favorable to Ms. Hamilton, this is sufficient, at the motion to dismiss stage, to allege a breach of express warranty claim. *See Bernath v. Potato Servs. of Michigan*, 300 F. Supp. 2d 175, 182 (D. Me. 2004) ("[W]hen a seller refuses or is unable to repair defective goods, a 'limited repair and replacement' remedy fails of its essential purpose.") (citations omitted). The motion to dismiss this claim is therefore **DENIED**.

### c)   Plaintiff Hahn (Ohio)

The Court next reviews Plaintiff Hahn's express warranty claim. On May 30, 2018, Mr. Hahn purchased a new 2017 Ford F-250 from Lebanon Ford, in Ohio. (CAC ¶ 106.) On July 31, 2020, Mr. Hahn presented the Vehicle to Lebanon Ford at 41,006 miles and requested Ford remediate the wobbling defect. (*Id.* ¶ 110.) By the time Mr. Hahn brought his Vehicle in to Ford for repair of the alleged defect, the Limited Warranty was no longer in effect. Coverage only existed for the earlier of three years or 36,000 miles. At 41,006 miles, Mr. Hahn's Vehicle no longer qualified for coverage under the Limited Warranty. Therefore, Mr. Hahn's express warranty claim fails. *See Davisson v. Ford Motor Co.*, No. 2:13-CV-00456, 2014 WL 4377792, at *7 (S.D. Ohio Sept. 3, 2014) (acknowledging that express warranties do not cover repairs made outside the warranty period). The claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

### 2.   "Successful" In-Warranty Repairs

Second, Ford argues that Plaintiff Powers (California) and Plaintiff Appel (Illinois)

both do not have an express warranty claim because the repairs they sought from Ford proved to be successful. These claims are analyzed below.

### a)   Plaintiff Powers (California)

On July 1, 2019, Mr. and Mrs. Powers purchased a 2019 F-250. (CAC ¶ 42.) On approximately January 2, 2020, Mr. Powers presented the Vehicle to North County Ford at 9,598 miles to diagnose and repair the shaking defect. The Vehicle was squarely within the warranty period at this time. After inspecting the Vehicle, a service technician agreed to replace the Vehicle's steering damper in order to attempt to cure this defect. However, at that time, North County Ford told Mr. Powers that the part was on backorder and would not be available for three months. (*Id.* ¶ 46.) In or around January 13, 2020, Mrs. Powers experienced the defect while driving the Vehicle. On January 20, 2020, Mr. and Mrs. Powers presented the Vehicle to North County Ford in Vista, California to have a new steering damper installed on the Vehicle. (*Id.* ¶ 48.) Since that time, Mr. and Mrs. Powers have not experienced the Death Wobble, however, "they are terrified that the new steering damper is only a temporary remedial measure for the Death Wobble." (*Id.*)

Mr. and Mrs. Powers have not sufficiently alleged an express warranty claim. The Powers only presented their Vehicle once for repair, but as their allegations show, they have not experienced symptoms of the alleged defect since this repair. Furthermore, there are no allegations by the Powers specifically that the defect is substantially certain to occur again. *See Benkle v. Ford Motor Co.*, No. SACV161569DOCJCGX, 2017 WL 9486154, at *10 (C.D. Cal. Dec. 22, 2017). The claims are **DISMISSED WITH LEAVE TO AMEND**.

### b)   Plaintiff Appel (Illinois)

On December 28, 2018, Mr. Appel purchased a pre-owned 2017 Ford F-250. At the time of the purchase, the Vehicle registered 5,479 miles on its odometer. (CAC ¶ 71.) On December 13, 2019, Mr. Appel presented the Vehicle to Hawk Ford in Oaklawn, Illinois at 17,959 miles and complained to the service department technicians about the shaking defect. (*Id.* ¶ 75.) After inspecting the Vehicle, technicians determined that there was an

7

applicable technical service bulletin to address the issue, which required replacing the steering damper. (*Id.*) Unfortunately, the steering damper required was on back order. (*Id.*) Mr. Appel did not want to wait for the part to come in due the dangerous nature of the defect, and so, he decided to pay for the repairs out-of-pocket. (*Id.*) In April 2020, Mr. Appel experienced the shaking defect again. (*Id.* ¶ 76.) He presented the Vehicle to Hawk Ford at 24,686 miles to diagnose and repair the underlying cause of the defect. After inspecting the Vehicle, the service technicians replaced the steering damper on the Vehicle. (*Id.*)

Although Mr. Appel comes closer than the Powers in alleging an express warranty claim, Mr. Appel's claim fails for the same reasons the Powers' claim does. Mr. Appel only presented his Vehicle for repair twice, but as the claims allege, he has not experienced symptoms of the alleged defect since this repair. Furthermore, there are no allegations by Mr. Appel specifically that the defect is substantially certain to occur again. *See Benkle*, 2017 WL 9486154, at *10. For these reasons, Mr. Appel's claim is **DISMISSED WITH LEAVE TO AMEND**.

### 3.   Insufficient Allegations of Breach

Next, the Court will analyze Ford's arguments relating to what it believes to be insufficient facts supporting a breach of warranty. In particular, Ford argues Plaintiff Nielsen (Colorado) and Plaintiff Saddler (Ohio) allege insufficient facts to state an express warranty claim.

### a)   Plaintiff Nielsen (Colorado)

On May 30, 2018, Mr. Nielsen purchased a new 2017 Ford F-250 from Old Longmont Ford, an authorized Ford dealership in Longmont, Colorado. (CAC ¶ 64.) On January 29, 2019, Mr. Nielsen presented the Vehicle to Freeway Ford in Denver, Colorado at 29,837 miles after experiencing the alleged defect. (*Id.* ¶ 67.) The service technician assigned to work on Mr. Nielsen's Vehicle test drove it and "verified the violent and abnormal shaking." (*Id.*) The CAC offers that "Mr. Nielsen's warranty covered the repairs but did not resolve the Death Wobble and the underlying Suspension Defect." (*Id.*)

The Court agrees that Mr. Nielsen's claim should be dismissed. Ford argues that Mr. Nielsen does not allege that he brought the Vehicle in for further repairs during the warranty period, much less that Ford refused any covered in-warranty repairs. (Doc. No. 35-1 at 19.) To state a claim for breach of express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) the breach proximately caused the losses claims as damages, and (4) defendant received timely notice of the breach. *See Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997) (citing *Palmer v. A.H. Robbins Co.*, 684 P.2d 187 (Colo. 1984)). "When a seller cannot cure defects by repeated repair attempts, a remedy limited to repair fails of its essential purpose." *Molina v. Ford Motor Co.*, 441 F. Supp. 3d 1176, 1185 (D. Colo. 2020). Here, Mr. Nielson only points to a single instance in which he sought repair. Without more, these allegations are insufficient to establish failed "repeated repair attempts" at remedying the alleged defect. This claim is therefore **DISMISSED WITH LEAVE TO AMEND**.

### b)     Plaintiff Saddler (Ohio)

On approximately January 28, 2018, Mr. Saddler purchased a 2015 F-250 from Mount Orab Ford with 49,880 miles on its odometer. (CAC ¶ 114.) "Almost immediately after purchasing his Vehicle, Mr. Saddler began observing severe wobbling in his truck at high speeds and on rough roads." (*Id.* ¶ 118.) On March 5, 2018, Mr. Saddler brought his F-250 in for service and the technician removed the front wheels and sway bar, then removed the drag link and replaced it. (*Id.*) The technician then adjusted the steering wheel, re-installed the way bar, and replaced the front wheels. "But the wobbling continued. Mr. Saddler returned the Vehicle to Mount Orab Ford on March 14, 2018 for additional service. Ford performed a quality control check but did not fix the problem." (*Id.* ¶ 119.)

Then, in approximately September 2018, Mr. Saddler traded in his F-250 to Mount Orab Ford and purchased a 2019 F-350. (*Id.* ¶ 120.) At approximately 30,000 miles, Mr. Saddler started to experience the same problems as he did with his 2015 F-250. (*Id.* ¶ 121.) Mr. Saddler again returned his Vehicle, with approximately 82,000 miles on it, back to Mount Orab Ford for additional service. (*Id.* ¶ 122.)

9

The Court will analyze whether there are viable express warranty claims for both Vehicles. With regard to the F-250, Mr. Saddler alleges that he brought his F-250 in for service of the defect twice within the CPO warranty period. He also alleged that his problems with his Vehicle persisted. At this stage of the matter, these facts are sufficient to state a claim for breach of express warranty. The motion is **DENIED** as to the F-250. As for Mr. Saddler's F-350, Mr. Saddler does not specify whether his Vehicle was new or pre-owned, and so, the Court is unable to adequately assess whether his Vehicle was covered by which warranty. This claim is **DISMISSED WITH LEAVE TO AMEND** to provide additional clarification for this claim.

### 4.     Pre-Suit Notice for Breach of Warranty Claims

Ford next argues the claims of Plaintiffs Nielsen (Colorado), Appel (Illinois), Hamilton (Maine), Selgado (New Mexico), Hahn (Ohio), Saddler (Ohio), Huffstetler (South Carolina), and McGee (Texas) all fail for the additional, independent reason that there was insufficient pre-suit notice of the breach of express warranty. (Doc. No. 35-1 at 22.) The Court will analyze whether there is adequate notice provided by each plaintiff below.

### a)     Plaintiff Appel (Illinois)

Ford argues Mr. Appel failed to provide any notice that there was a breach of the express warranty. (Doc. No. 39 at 8.) Ford believes Mr. Appel merely provided generalized assertions that there were problems with the Vehicle. (*Id.* at 8–9.) However, at this juncture, Mr. Appel's allegations are sufficient to allege pre-suit notice. Specifically, the CAC provides that on December 13, 2019, "Mr. Appel presented the Vehicle to Hawk Ford in Oaklawn, Illinois at 17,959 miles and complained to the service department technicians about the Death Wobble. After inspecting the Vehicle, technicians determined that there was an applicable technical service bulletin to address the Death Wobble, which required replacing the steering damper." (CAC ¶ 75.) This is certainly enough to allege that Ford was apprised of the alleged defect with the Vehicle. *See Connick v. Suzuki Motor Co.*, Ltd., 675 N.E.2d 584, 590 (Ill. 1996) (notice requirement for breach of express warranty claims

10

"satisfied only where a manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"). The motion to dismiss for want of pre-suit notice is **DENIED**.

### b) Plaintiff Hamilton (Maine)

Ford makes the same argument for Ms. Hamilton, regarding Plaintiffs' conflating of pre-suit notice with generalized grievances of the Vehicle. (Doc. No. 39 at 8–9.) The Court disagrees. The allegations do sufficiently provide enough to show pre-suit notice. In particular, Ms. Hamilton alleges that, "[i]n February 2019, [she] complained about the Death Wobble to Al Packer Ford in Palm Beach, Florida while the Vehicle was in for an oil change. According to the service department, they had never heard of the problem and did not have a solution for the problem." (CAC ¶ 92.) Under Maine law, notice need "merely be sufficient to let the seller know that the transaction is still troublesome and must be watched," and the notice requirement is not meant and should not function to deprive a consumer of a remedy. *Muehlbauer v. Gen. Motors Corp.*, No. 05 C 2676, 2008 WL 4542650, at *4 (N.D. Ill. July 22, 2008) (citing Me. Rev. Stat. Ann. Tit 11, § 2-607 cmt. 4). For these reasons, the motion is **DENIED** on this ground.

### c) Plaintiff Huffstetler's (South Carolina)

Ford challenges Mr. Huffstetler's (SC) pre-suit notice. (Doc. No. 39 at 9.) Again, Ford disputes the sufficiency of the notice, pointing out that Mr. Huffstetler only provides allegations of generalized complaints. The CAC states that on December 17, 2017, Mr. Huffstetler purchased a new Ford 2017 F-250. (CAC ¶ 137.) On May 28, 2020, Mr. Huffstetler presented the Vehicle to Jim Hudson Ford at 23,608 miles and complained of the Death Wobble. (*Id.* ¶ 141.) "After inspecting the Vehicle, the technicians verified Mr. Huffstetler' s complaint and installed a new steering damper in an effort to correct the problem pursuant to Customer Satisfaction Program 20NO4." (*Id.*) South Carolina Code of Laws Section 36-2-607(3) provides that "the buyer must within a reasonable time after he discovers or should discover any breach notify the seller of [the] breach or be barred from any remedy." Section 36-2-607(3) "does not prescribe any form for the required

11

notification." *United States v. S. Contracting of Charleston, Inc.*, 862 F. Supp. 107, 111 (D.S.C. 1994). Thus, this notice is enough to proceed with the breach of express warranty claim. The motion to dismiss is **DENIED** on this ground.

### d)      Plaintiff Selgado's (New Mexico)

Ford also takes issue with Mr. Selgado's notice. On May 4, 2018, Mr. Selgado purchased a new 2018 Ford F-250. (CAC ¶ 97.) On December 15, 2020, Mr. Selgado presented the Vehicle to Rich Ford at 19,350 miles after having experienced the Death Wobble a few days prior. (*Id.* ¶ 101.) At the dealership, a technician test drove the Vehicle and verified Mr. Selgado's complaints, stating in the service records that "when going over bumps [the] steering wheel would shake aggressively." (*Id.*) Although there is an apparent split in New Mexico law regarding the form of notice required, the Court takes the position that the notice requirement is satisfied by presenting the car to an authorized dealership for warranty service. *See Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 971 (N.D. Cal. 2018) (regarding New Mexico law, the notice requirement is satisfied by presenting the car to an authorized dealership for warranty service even if a breach is not specifically alleged); *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 702 (S.D. W.Va. 2014) (denying motion to dismiss based on lack of pre-suit notice for New Mexico warranty claim because "a factual issue exists as to the existence and adequacy of notice, the Court finds the issue ill-suited for resolution under Rule 12(b)."). Here, Mr. Selgado presented the Vehicle for warranty service after experiencing the shaking issues, which was confirmed by technicians. At the very minimum, questions of fact exist as to whether the notice here can be considered sufficient. The motion is therefore **DENIED** to the extent it is based on notice.

### e)      Plaintiffs Hahn and Saddler (Ohio)

Next, Ford asserts that Mr. Hahn's and Mr. Saddler's notices are deficient. Under Ohio law, to state a claim for breach of express warranty, a plaintiff must provide the defendant with reasonable notice of the defect. Failure to plead pre-litigation notice requires dismissal of a breach of warranty claim. *See St. Clair v. Kroger Co.*, 581 F. Supp.

2d 896 (N.D. Ohio 2008). There is a split of authority as to whether filing a complaint may constitute sufficient notice under Ohio law. *Lincoln Elec. Co. v. Technitrol, Inc.*, 718 F. Supp. 2d 876, 873 (N.D. Ohio 2010) ("Ohio does not have a per se rule that the filing of a complaint cannot constitute notice under § 1302.65(C)(1), but the Ohio Supreme Court was clear that a complaint could only constitute notice in 'a proper case.'").

Here, not only did Mr. Hahn and Mr. Saddler both file a complaint, they allege in the CAC that they provided notice to Ford by requesting that Ford remediate the "Death Wobble" specifically. (CAC ¶¶ 110, 118, 119, 122.) The Ohio Supreme Court stated it is a, "well-established rule that the determination of a reasonable time and the adequacy of notice to the seller are ordinarily questions of fact." *AGF, Inc. v. Great Lakes Heat Treating Co.*, 51 Ohio St. 3d 177, 180 (1990) (internal quotations and citations omitted). At this stage, and based on the facts alleged, the Court concludes Mr. Hahn and Mr. Saddler's claims under Ohio law are not subject to dismissal for lack of notice. *Cf. In re MyFord Touch Consumer Litig.*, 46 Fed. Supp. 3d 936, 975-76 (N.D. Cal. 2014) (analyzing Ohio law and concluding, at pleadings phase, filing of complaint could satisfy notice requirement). Ford's motion is **DENIED** as to this argument.

### f)    Plaintiff Nielsen (Colorado)

Ford also takes issue with Mr. Nielsen's notice. Under Colorado law, a buyer is only required to allege that the seller received some form of notice, even if informal, to plead a breach of express warranty claim. *Prutch v. Ford Motor Co.*, 618 P.2d 657, 661 (Colo. 1980) ("Ford received from its dealer prompt, actual notice of the machinery's malfunction and almost immediately had an opportunity to repair the equipment. . . . Indeed, it is highly unlikely that those purposes could have been more thoroughly or satisfactorily met by delivery of formal notice directly from the plaintiffs to the manufacturer."). The allegations in the CAC set forth that Mr. Nielsen raised his complaints about the Death Wobble with the Ford service department. (CAC ¶ 67.) The service technician assigned to work on Mr. Nielsen's vehicle test drove it and verified the violent and abnormal shaking. (*Id.*) No more is required under Colorado law to allege pre-suit notice, and so, the motion is **DENIED** in

this respect.

### g)      Plaintiff McGee (Texas)

Finally, Ford disputes whether Ms. McGee provided Ford with sufficient notice. Texas law also requires a plaintiff to notify the warrantor of alleged express warranty breaches before suing. *See Ketter v. ESC Med. Sys., Inc.*, 169 S.W.3d 791, 796 (Tex. App. 2005); *McKay v. Novartis Pharms. Corp.*, 934 F. Supp. 2d 898, 913 (W.D. Tex. 2013), aff'd 751 F.3d 694, 706 (5th Cir. 2014). "A general expression of the buyer's dissatisfaction with the product may be sufficient." *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 201 (Tex. App. 2003). "A person has 'notice' of a fact if the person: (1) has actual knowledge of it; (2) has received a notice or notification of it; or (3) from all the facts and circumstances known to the person at the time in question, [the person] has reason to know that it exists." *Galaxy Powersports, LLC v. Benzhou Vehicle Indus. Grp. Co., Ltd.*, No. 10-CV-360, 2012 WL 13024094, at *5 (N.D. Tex. Sept. 27, 2012) (alteration omitted). Here, Ms. McGee brought in her Vehicle into Ford to remedy the alleged wobbling defect at least four times. (CAC ¶¶ 129, 131, 132, 133.) Thus, because of this recurring problem, Ford was put on notice of Ms. McGee's issues with the alleged defect. The motion to dismiss based on this contention is therefore **DENIED**.

In sum, to the extent Ford seeks to dismissal of certain claims for lack of pre-suit notice, that motion is **DENIED**.

### B.      The Magnuson-Moss Warranty Act ("MMWA")

Ford then argues that Plaintiffs' MMWA claims fail because they are derivative of the state law warranty claims. (Doc. No. 35-1 at 24.) The MMWA "allows a consumer to bring a suit where [they] claim[] to be damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA] or under a written warranty, implied warranty, or service contract." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (internal quotations and citations omitted). "There are two types of written warranties under the [MMWA]: full warranties and limited warranties." *Id.* (citing 15 U.S.C. § 2303(a)). The MMWA does not provide remedies for breach of

"limited" warranties. *Id.* Instead, the MMWA allows consumers to "enforce written and implied warranties in federal court" by "borrowing state law causes of action." *Id.* Thus, a court's "disposition of the state law warranty claims determines [its] disposition of the [MMWA] claims." *Id.*

Accordingly, here, the determination of the state law warranty claims will inform the MMWA claim. Therefore, the conclusions applicable to the state law warranty claims discussed above apply with equal force to the MMWA claim. There is no need to dismiss this claim at this time.

## C.   Plaintiff's Implied Warranty Claims

Now turning to the implied warranty claims, Ford argues that Plaintiffs' implied warranty of merchantability claims under the California Song-Beverly Act and under Colorado, Maine, New Mexico, Ohio, South Carolina, and Texas common law fail for a multitude of reasons. (Doc. No. 35-1 at 24.) The merit of each argument is addressed in detail below.

### 1.   Lack of Privity Regarding Ohio Claims

First, Ford attacks the viability of the Ohio implied breach of warranty claim brought by Plaintiffs Hahn and Saddler. In the CAC, Plaintiffs Hahn and Saddler bring a breach of implied warranty claim under Ohio Rev. Code Ann. §§ 1302.27 and 1310.19. (CAC ¶¶ 548–557.) Under Ohio law, implied warranty claims can be brought under both contract law and tort law. *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 2015-Ohio-4884, ¶ 18, 50 N.E.3d 955, 962. To sustain a contract-based breach of implied warranty claim, the parties must be in privity. *Curl v. Volkswagen of Am., Inc.*, 2007-Ohio-3609, ¶ 24, 114 Ohio St. 3d 266, 271, 871 N.E.2d 1141, 1146.

Here, Ford and Plaintiffs Hahn and Saddler are not in privity because, in Ohio, vertical privity exists only between immediate links in the distribution chain. Plaintiffs Hahn and Saddler allege in the CAC that they purchased the Vehicles from authorized Ford dealerships, not directly from Ford, the manufacturer. (CAC ¶¶ 106, 114.) To the extent that Plaintiffs Hahn and Saddler's claim for breach of implied warranties advances a claim

15

based on contract law, that claim fails for want of privity. *Ultimax, Inc. v. Mercedes-Benz USA, LLC*, No. 2:06-CV-951, 2008 WL 974036, at *8 (S.D. Ohio Apr. 8, 2008) ("In this case, Defendant did not directly sell the Vehicle to Plaintiff. Rather, Plaintiff bought the Vehicle from an intermediary, Germain. Plaintiff is in privity with Germain, but not with Defendant. This lack of privity between Plaintiff and Defendant dooms Plaintiff's implied warranty claim.") (citation omitted).

Plaintiffs Hahn and Saddler attempt to salvage their claim by making two arguments. First, they contend that the third-party beneficiary exception applies to cure any concerns about the want of privity. Under Ohio law, privity may be inferred between a defendant manufacturer and plaintiff "when the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer" or if plaintiff "is an intended third-party beneficiary to a contract." *W.H.C., Inc. v. Interlake Chemicals, LTD*, No. 1:21-CV-0675, 2021 WL 2940829, at *3 (N.D. Ohio July 13, 2021). But Plaintiffs Hahn and Saddler fall short of establishing the status of a third-party beneficiary. Plaintiffs are required to specifically allege these exceptions in their complaint. *See Traxler v. PPG Industries, Inc.*, 158 F. Supp. 3d 607, 625 (N.D. Ohio 2016) (holding that consumer plaintiff and manufacturer defendant were not in privity because plaintiff merely stated the legal conclusion that it is an intended third-party beneficiary with no other specific allegations); *Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012) (holding that consumer plaintiff failed to state a claim for breach of implied warranty against defendant manufacturer because plaintiff did not specifically allege its status as a third-party beneficiary and stated in the complaint that he purchased the product from a distributor, not defendant). Because Plaintiffs Hahn and Saddler have not specifically alleged any exception to privity, Ohio law requires the dismissal of this claim.

Second, Plaintiffs Hahn and Saddler also attempt to save their claim by arguing that they also plead a tortious breach of implied warranty claim, which does not require privity. (Doc. No. 38 at 16.) "'Implied warranty in tort' is a common-law cause of action that

imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is 'of good and merchantable quality, fit and safe for its ordinary intended use.'" *White v. DePuy, Inc.*, 129 Oh. App. 3d 472 (12th Dist. 1998). Privity is not required for tortious implied warranty claims because, as the Ohio Supreme Court has previously stated, "the doctrine of implied warranty in tort was designed to protect consumers not covered by contractual sales warranties because of lack of privity." *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 49 (1989) (citing *Avenell v. Westinghouse Elec. Corp.*, 41 Ohio App. 2d 150, 156 (Ohio Ct. App. 1974)). The problem Plaintiffs Hahn and Saddler have here, however, is that they do not attempt to plead in the CAC a tortious implied warranty claim. After review of the CAC, Plaintiffs only allege their implied warranty claim under UCC provisions, which apply to implied warranty claims based on contract. (CAC at 116.) Nowhere in the CAC can the Court even construe a tortious implied warranty claim. Thus, this argument falls short.

Accordingly, the Court must grant Ford's motion to dismiss Plaintiffs Hahn and Saddler's breach of implied warranty claim. This claim is **DISMISSED WITH LEAVE TO AMEND**.

### 2. Pre-Suit Notice for Breach of Implied Warranty Claims

Next, Ford makes the argument that the implied warranty claims of Plaintiffs Nielsen (Colorado), Hamilton (Maine), Selgado (New Mexico), Hahn (Ohio), Saddler (Ohio), Huffstetler (South Carolina), and McGee (Texas) fail for the lack of pre-suit notice. (Doc. No. 35-1 at 25–26.) The Court's prior analysis of pre-suit notice for Plaintiffs' express warranty claims apply with equal force to the implied warranty claims, and the Court need not revisit the issue. At the minimum, whether sufficient notice was given is a question of fact, but Plaintiffs have adequately alleged that they put Ford on notice as to the claimed wobbling defects.

### 3. Plaintiffs Smalley (California) and Hahn (Ohio)

The next argument Ford makes is that Plaintiffs Smalley (California) and Hahn's (Ohio) implied warranty claims fail because they did not experience an issue with their

17

vehicles within the durational limits of the Limited Warranty. (Doc. No. 35-1 at 26.) Ford's Limited Warranty provides that implied warranty claims are limited to the "time period covered by the written warranties." Neither Plaintiff Smalley nor Plaintiff Hahn endured problems within this durational limit, Ford avers. (*Id.*) Plaintiffs respond by invoking the latent defect exception, arguing that the durational limit defined by the warranty does not apply when there is a latent defect that manifests outside the applicable warranty period. (Doc. No. 38 at 20.)  These arguments are addressed below for each Plaintiff.

**Plaintiff Smalley (California)**. Under the Song-Beverly Act, the duration of the implied warranty of merchantability and the implied warranty of fitness for used goods, such as the Vehicle at issue here, is "coextensive in duration with an express warranty which accompanies the consumer goods." Cal. Civ. Code § 1795.5. "[I]mplied warranty claims under the Song-Beverly Act based on a latent defect discovered outside the durational limit [set forth in California Civil Code Section 1791.1(c)] are permissible." *Robey v. FCA US LLC*, No. 8:20-cv-00367-JLS-DFM, 2020 WL 2488575, at *3 (C.D. Cal. May 14, 2020) (discussing *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009); *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015)). In *Daniel v. Ford Motor Co.*, the Ninth Circuit found that Song-Beverley "does not create a deadline for discovering latent defects or for giving notice to the seller . . . ." 806 F.3d 1217, 1223 (9th Cir. 2015). Plaintiff Smalley has pled that the alleged defect was latent. (CAC ¶ 28.) Accordingly, the Court declines to dismiss the implied warranty claim for occurring outside of the scope of the warranty since Plaintiffs have pled that the defect was latent and existed within the time period of the warranty.

**Plaintiff Hahn (Ohio)**. In addition to arguing that Plaintiff Hahn's implied warranty claim fails for lack privity (which the Court agrees with), Ford also maintains that Plaintiff Hahn's implied warranty claim falls outside the scope of the warranty's durational limit. (Doc. No. 35-1 at 26.) In opposition, Plaintiff Hahn argues that he does not need to demonstrate that the defect manifested within the warranty period. (Doc. No. 38 at 20.) Plaintiff Hahn cites to *In re Porsche Cars N. Am., Inc.*, for the proposition that a plaintiff's

breach of implied warranty in tort claims can be brought within two years of the defect manifesting, irrespective of the date of purchase. 880 F. Supp. 2d 801 (S.D. Ohio 2012). But as explicated above, the Ohio Plaintiffs do not plead tortious implied warranty claims. Plaintiffs do not cite other authority supporting their claim that they may bring implied warranty claims, based on contract, outside the warranty period. As such, Plaintiff Hahn's implied warranty claim is **DISMISSED WITH LEAVE TO AMEND** for this additional reason.

### 4. Plaintiff Smalley (California)

Ford mounts additional attacks on Plaintiff Smalley's implied warranty claim. (Doc. No. 35-1 at 26.) Ford argues the Song-Beverly Act does not apply to her purchase because the Act only applies to purchasers of new consumer goods. (*Id.*) This is correct. The California Court of Appeal has looked to the Song-Beverly Act, and recently held that "[u]nder the lemon law, only distributors and retail sellers, not manufacturers, are liable for breach of implied warranties in the sale of a used car where, as here, the manufacturer did not offer the used car for sale to the public." *Nunez v. FCA US LLC*, 61 Cal. App. 5th 385 (2021). Ford was the manufacturer of the car, not a distributor or dealer who sold the used car to Plaintiff Smalley. Therefore, Plaintiff Smalley's implied warranty claim against Ford necessarily fails. The claim will be **DISMISSED WITHOUT** leave to amend.

### D. Fraud-Based Claims

Ford moves to dismiss Plaintiffs' fraud-based claims (for violation of various state consumer protection statutes and for fraudulent concealment). Ford makes two primary arguments based on: (1) failure to plead with particularity under Rule 9(b), and (2) because Plaintiffs' assertion of "knowledge" of the "defect" are undermined by the facts they have pled. (Doc. No. 35-1 at 27.)

### 1. Fraud-Based Claims Based on Affirmative Misrepresentations

For allegations of affirmative misrepresentations, Plaintiffs must allege "the who, what, when, and how of the misconduct charged," including what is false or misleading about a statement, and why it is false. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d

993, 998 (9th Cir. 2010) (internal citations and quotations omitted). Ford argues Plaintiffs have failed to meet this requirement because they do not identify any specific affirmative statement related to the suspension system that they allegedly saw before their purchases. (Doc. No. 35-1 at 27.) Plaintiffs do not have a meaningful answer.

In the CAC, Plaintiffs each allege, in a conclusory manner, that they "reviewed the sticker Ford placed on its window," which advertised the "various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings)" and that Plaintiffs, "relied on the advertisements contained within the window sticker when deciding to purchase the Vehicle. The window sticker did not state that the Vehicle suffered from any defects." (*See, e.g.*, CAC ¶ 127.) Furthermore, the allegations additionally all add, in similar fashion, that they "spoke with one or more sales representatives at representatives" at Ford regarding the "various features, benefits, and attributes of the Vehicle and relied on those when deciding to purchase the vehicle." (*See, e.g.*, *id.* ¶ 128.)

Nowhere in the CAC do Plaintiffs plead with specificity any affirmative statement concerning the suspension system at issue. These generalized and vague assertions do not rise to the level of any specific affirmative statement concerning the relevant aspects of the Vehicles. Accordingly, to the extent Plaintiffs bring affirmative fraud-based claims, these threadbare claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

### 2.    Fraud-Based Claims Based on Omission

#### a)    Knowledge

Next, the Court looks at Plaintiffs' fraud-based claims based on omission. As a preliminary matter, to survive a motion to dismiss under Rule 12(b)(6), allegations of fraud must meet the heightened pleading requirements of Rule 9(b). As applied to Plaintiffs' claim for fraud, a fraud by omission or fraud by concealment claim "can succeed without the same level of specificity required by a normal fraud claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). When a claim rests on allegations of fraudulent omission, the Rule 9(b) standard is somewhat relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but

a failure to act." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (internal citations omitted). Nonetheless, a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("The Ninth Circuit has recently clarified that claims of nondisclosure and omission, as varieties of misrepresentations, are subject to the pleading standards of Rule 9(b).")). As such, Plaintiffs are still required to plead the "what," "why," and "how" to establish a claim based on fraud. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1190 (C.D. Cal. 2010).

Ford argues that Plaintiffs have failed to specifically plead "pre-purchase knowledge" of the alleged defect. (Doc. No. 35-1 at 29.) The basis of this contention is that the CAC contains allegations of issues with Ford's F-series spanning the period of fifteen years. (*Id.*) However, Ford essentially objects based on relevance, claiming that complaints surrounding these older models do not bear any relation to the models in dispute in this litigation. (*Id.*) Ford advocates for the Court to analyze Plaintiffs' allegations of knowledge by model year, instead of lumping together all consumer complaints from these fifteen years. (*Id.*)

The Court has already addressed these similar arguments in its previous dismissal order, and need not repeat itself in detail once again. The Court agrees that at some point, Plaintiffs will need to provide a link between each model year at issue, and the corresponding inferences of knowledge. But that is an issue of proof to be analyzed at a further stage of litigation. At the motion to dismiss stage, the Court is simply tasked with reviewing the CAC for specific factual allegations that support some inference of knowledge of the alleged issues with the suspension system. Plaintiffs have done so here. As the Court has already decided in its prior order, "[i]t would strain credulity to say that Plaintiffs have not pled knowledge on the part of Ford when from March 10, 2005 to February 6, 2019, a staggering 1,265 consumer complaints were submitted to the NHTSA

with consumers experiencing the alleged violent shaking defect of their Vehicles." (Doc. No. 30 at 20.) These allegations are still present in the CAC, (CAC ¶ 153), and there is nothing new to suggest that the Court should disturb that prior ruling.

And, as the Court has previously stated, "Plaintiffs do not rest their theory of knowledge on just the NHTSA complaints alone. In addition to the NHTSA complaints, Plaintiffs point to (1) Ford's own records of customers' complaints, (2) dealership repair records, (3) warranty and post-warranty claims, and (4) pre-sale durability testing and part sales as grounds to infer knowledge." (*Id.* at 21.) There is no reason to deviate from this prior ruling as these allegations have not changed, even if some plaintiffs have. (CAC ¶ 166.) With these specific facts in the CAC, the motion to dismiss the fraud-based omission claims is **DENIED**.

### 3.      Duty to Disclose—Fraudulent Concealment Claims

Next, Ford argues that under the laws of Illinois, Maine, Ohio, South Carolina, and Texas, it had no duty to disclose the alleged defect. (Doc. No. 35-1 at 31.) The Court will address each argument in each jurisdiction below.

### (1)      Illinois

In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when it was under a duty to disclose that fact to plaintiff. *See Lidecker v. Kendall College*, 194 Ill. App. 3d 309, 314 (1990). A duty to disclose a material fact may arise out of several situations. First, if a plaintiff and a defendant are in a fiduciary or confidential relationship, then the defendant is under a duty to disclose all material facts. *Kurti v. Fox Valley Radiologists, Ltd.*, 124 Ill. App. 3d 933, 938, 80 (1984). Second, a duty to disclose material facts may arise out of a situation where the plaintiff places trust and confidence in the defendant, thereby placing the defendant in a position of influence and superiority over the plaintiff. *Kurti*, 124 Ill. App. 3d at 938. This position of superiority may arise by reason of friendship, agency, or experience. *Kurti*, 124 Ill. App. 3d at 938.

22

Contrary to Ford's assertion, "a manufacturer of cars . . . owe[s] a duty to consumers under Illinois law to disclose 'safety defects.'" *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 414 (S.D.N.Y. 2017) (citing *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017)). In the CAC, Plaintiffs adequately plead under Illinois law that, "Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiff and the Illinois Class members." (CAC ¶ 390.) These allegations that Ford was in a superior position, with superior knowledge is enough, at the motion to dismiss stage. The motion is **DENIED** on this ground.

### (2)   Ohio

Ford also argues that under Ohio law, there is no duty by a manufacturer to disclose safety defects. (Doc. No. 35-1 at 31.) But as aptly stated by another district court analyzing Ohio law, "Plaintiffs do not cite any authority indicating that Ohio recognizes a safety defect duty to disclose." *Chapman v. Gen. Motors LLC*, No. 219CV12333TGBDRG, --- F. Supp. 3d ----, 2021 WL 1286612, at *17 (E.D. Mich. Mar. 31, 2021). Accordingly, this claim is **DISMISSED WITHOUT LEAVE TO AMEND**. *See also Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 795 (E.D. Mich. 2019) (finding no authority supporting a duty to disclose when there is a safety defect under Ohio law).

### (3)   Texas

Ford next argues there is no duty to disclose under Texas law. This is correct. "[N]umerous cases have discussed the duty element in the context of fraudulent concealment at both the motion to dismiss and summary judgment stages, and found a manufacturer has no duty of disclosure to a consumer." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 849 (S.D. Tex. 2018). Under Texas law, a duty to disclose in the context of fraudulent concealment arises only in limited circumstances where there is a fiduciary or confidential relationship. *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 453 (S.D.N.Y. 2017) (applying Texas law). "No duty arises in an arms-length

23

transaction between a manufacturer and consumer, particularly where Plaintiffs did not purchase or lease their vehicles directly from the manufacturer." *Adams*, 395 F. Supp. 3d at 850 (S.D. Tex. 2018).

Here, the Texas plaintiff, Ms. McGee purchased her 2018 F-250 from Jim Bass Ford in San Angelo, Texas. (CAC ¶ 126.) She did not purchase her truck directly from Ford. In what appears to be an arms-length transaction where Ms. McGee did not directly deal with Ford, the manufacturer, there is no duty. This claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

As another independent basis for dismissal, Ford moves to dismiss count 34 of the CAC because fraudulent concealment cannot be a stand-alone claim for relief under Texas authority. Once again, Ford is correct. *Gaona v. Garland Surgicare Partners, Ltd.*, No. 05-15-00645-CV, 2016 WL 4189343, at *3 (Tex. App. Aug. 8, 2016) ("[F]raudulent concealment is an affirmative defense to limitations, and not an independent cause of action . . . ."); *Iverson v. Dolce Mktg. Grp.*, No. 05-12-01230-CV, 2014 WL 1415106, at *3 (Tex. App. Mar. 28, 2014) ("Fraudulent concealment is an affirmative defense to statutes of limitations and not an independent cause of action.") (citing *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 10 (Tex. App. 2005). Accordingly, Plaintiff McGee may not maintain a fraudulent concealment claim under Texas law.

### (4)    Maine

Ford argues that there is no duty to disclose, under Maine law without "fiduciary or confidential relationship." (Doc. No. 35-1 at 31.) But under Maine law, "fraud based on a party's silence may still be actionable depending on the facts of the case." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1009 (N.D. Cal. 2018) (quoting *Martin v. Ort*, No. BANSC-CV-2015-195, 2016 WL 1069907, at *3 (Me. Super. Feb. 03, 2016)). Dismissal is inappropriate at this stage given that Plaintiffs have successfully alleged fraud by omission. The motion is **DENIED** for this claim.

### (5)     South Carolina

Ford also argues no duty to disclose under South Carolina law, citing *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 447 (4th Cir. 2001) (South Carolina only recognizes duty to disclose in limited circumstances). South Carolina courts have made clear that a duty to disclose arises in only three circumstances: (1) where there exists a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; or (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties. *Ardis v. Cox*, 431 S.E.2d 267, 270 (Ct. App. 1993). Under these limited circumstances, Plaintiffs cannot allege a fiduciary relationship, an affirmative misrepresentation, or any other facts recognized as creating a duty to disclose in South Carolina. Thus, this claim will be **DISMISSED WITH LEAVE TO AMEND**.

### 4.     Various Other Grounds for Dismissal

Ford also seeks dismissal of various state law claims for various different reasons, which will be considered below. (Doc. No. 35-1 at 32.)

### a)     Colorado Consumer Protection Act

Ford seeks dismissal of Plaintiffs' Colorado Consumer Protect Act ("CCPA") claim because the CCPA bars class action claims for monetary relief. (*Id.*). The CCPA provides that: "***Except in a class action*** or a case brought for a violation of section 6–1–709, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable [for actual or statutory damages]." Colo. Rev. Stat. § 6–1–113(2) (emphasis added). In responding, Plaintiffs argue that Federal Rule of Civil Procedure 23 trumps this state bar on class actions. (Doc. No. 38 at 25.)

Here, there is a conflict between federal and state law. The CCPA directly conflicts with Federal Rule of Civil Procedure 23, as the former precludes private class actions, and the latter does not. But in some circumstances, federal procedural rules will trump state procedural rules. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). In *Shady Grove*, the United States Supreme Court held that a New York law that prohibited class action suits seeking penalties or statutory minimum damages would be trumped by Rule 23, which allows class actions to be maintained as long as two conditions are met. *Id.* at 411. The Supreme Court held that matters may proceed as putative class actions, regardless of whether state statutes prohibit such claims, so long as the application of Rule 23 does not "abridge, enlarge or modify any substantive right" in violation of the Rules Enabling Act. *Id.* at 407 (quoting 28 U.S.C. § 2072(b)).

However, *Shady Grove* is a deeply splintered opinion. Thus, different district courts—grappling with similar issues of whether Rule 23 displaces state law bars on class actions—have reached different conclusions based on varying interpretations of *Shady Grove*. Here, Ford relies on cases from the Northern District of California and the District of Colorado to argue that Rule 23 is not a bar to its Colorado law claim. (Doc. No. 35-1 at 32.) Plaintiffs on the other hand, point to a line of authority out of this Court, holding that Rule 23 trumps state law prohibitions on class actions. (Doc. No. 38 at 25.)

These various district courts arrive at different conclusions depending on what they view as the controlling opinion in *Shady Grove*. Ford's cases reach the conclusion that state law bars class actions by relying on the concurrence opinion written by Justice Stevens. These district court decisions hold that Justice Stevens's concurrence provides the narrowest ground for the holding, and "is the controlling opinion." *In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558, at *27 (N.D. Cal. Sept. 14, 2016), on reconsideration in part, No. 13-CV-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016). Under Justice Stevens's analysis, Rule 23 will not govern if the state statute is "procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 559

26

U.S. at 423 (Stevens, J., concurring). By contrast, Plaintiffs cite to three cases in this district finding that Justice Stevens's concurrence is not the controlling opinion because it is not the narrowest opinion.[1] *See Andren v. Alere, Inc.*, No. 16CV1255-GPC(AGS), 2017 WL 6509550, at *21 (S.D. Cal. Dec. 20, 2017) (Curiel, J.); *In re Hydroxycut Mktg. and Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) (Moskowitz, J.); *Reed v. Dynamic Pet Prods.*, No. 15cv987-WQH-DHB, 2016 WL 3996715, at *6 (S.D. Cal. July 21, 2016) (Hayes, J.). Finding that Justice Stevens's decision is not the controlling opinion, courts in this district have looked to pre-*Shady Grove* Ninth Circuit cases analyzing whether the application of federal rules in certain situations would violate the Rules Enabling Act. *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. at 653.

Upon thorough review of these cases, the Court agrees that state law class action bars are procedural rules because "a rule barring class actions does not prevent individuals who would otherwise be members of the class from bringing their own separate suits or joining in a preexisting lawsuit." *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. at 654; *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1086 (S.D. Cal. 2017). The substantive rights of these individuals are not affected whether they choose to pursue their claims individually, or as a collective group. The prohibitions against class

---

[1] In explaining why Justice Stevens's opinion is not controlling, Judge Moskowitz in *In re Hydroxycut Mktg. and Sales Practices Litig.*, reasoned:

> Defendants would have a strong argument if Justice Stevens' opinion were the controlling one. However, the Court does not believe this to be the case. Many of the courts that hold that Justice Stevens' concurring opinion is the controlling opinion of *Shady Grove* rely on *Marks v. United States*, 430 U.S. 188, 193 (1977), where the Supreme Court explained, "[T]he holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds...." But *Marks* has no application here. As explained by the Ninth Circuit in *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir.2012), the *Marks* standard should only be applied "where an opinion can be meaningfully regarded as narrower than another and can represent a common denominator of the Court's reasoning." This standard "requires that the narrowest opinion is actually the logical subset of other, broader opinions, such that it embodies a position implicitly approved by at least five Justices who support the judgment." *Id.* (internal quotation marks omitted).

299 F.R.D. 648 (S.D. Cal. 2014).

actions only affect "how the claims are processed," and does not preclude individuals from obtaining their day in court. *Id*. The class action device, "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove*, 559 U.S. at 408. The only difference is that in federal court, the putative class members may pursue a different method of obtaining the same relief. Because the Court finds that state law class action bars are procedural, federal procedural law (Rule 23) trumps these state law procedural prohibitions. Accordingly, the Court disagrees with Ford, and so, **DENIES** its motion to dismiss on this ground.

### b) Ohio Consumer Sales Practices Act ("OCSPA")

Ford moves to dismiss the OCSPA claim due to Plaintiffs' failure to adequately allege notice. (Doc. No. 35-1 at 32.) To pursue a class action claim under the OCSPA, Plaintiffs must allege that Ford had prior notice that its conduct was "deceptive or unconscionable." *See Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) (quoting O.R.C. § 1345.09(B)). To satisfy the notice requirement, a plaintiff "must allege either that 'a specific rule or regulation has been promulgated [by the Ohio Attorney General] under [O.]R.C. [§]1345.05 that specifically characterizes the challenged practice as unfair or deceptive,' or that 'an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection.'" *See id.* (quoting *Johnson v. Microsoft Corp.*, 802 N.E.2d 712, 720 (Ohio Ct. App. 2003)). The decisions of federal courts sitting in Ohio are insufficient to provide the required notice. *See Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 648 (N.D. Ohio 2012). Lack of prior notice requires dismissal of class action allegations. *See Bower v. Int'l Bus. Machines, Inc.*, 495 F. Supp. 2d 837, 841 (S.D. Ohio 2007).

Here, Plaintiffs do not adequately allege that Ford was put on notice by an Ohio court decision or a specific rule or regulation which has been promulgated by the Ohio Attorney General. Finding that there are no facts supporting notice, the claim is **DISMISSED WITH LEAVE TO AMEND**.

### c)   Arizona Consumer Fraud Act

Ford also argues that the Arizona Consumer Fraud Act is barred by the relevant one-year statute of limitations. (Doc. No. 35-1 at 33.) The limitations period for violation of the Arizona Consumer Fraud Act is one year because a consumer fraud claim is created by statute. A.R. S. § 12–541(5); *Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 591, 892 P.2d 1375, 1380 (Ct. App. 1994). The statute of limitations for both consumer fraud and common law fraud begins to run "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Alaface*, 181 Ariz. at 591.

Here, the claim is time-barred. The CAC provides that Mr. Atterson purchased a new 2017 Ford F-350 on January 17, 2018. (CAC ¶ 55.) On approximately April 3, 2018, Mr. Atterson "experienced the Death Wobble for the first time while driving on the interstate: after transferring from a bridge, the front end shook violently while driving at a speed of 65 mph." (*Id.* ¶ 55.) Then, in April 2018, Mr. Atterson "took the Vehicle to Capital Ford of Indianapolis to correct the Defect, but the service technician stated there was 'nothing wrong' with the Vehicle." (*Id.* ¶ 56.) On July 30, 2018, with 18,963 miles on the odometer, Mr. Atterson took the Vehicle to Innskeep Ford. Innskeep Ford verified his concern, checked the Vehicle's alignment, and adjusted the caster and toe. (*Id.* ¶ 56.)

According to the factual allegations in the CAC, Mr. Atterson should have "discover[ed] or with reasonable diligence could have discovered the fraud" between April and July 2018. However, Mr. Atterson did not file his claim until October 2019. Therefore, his claim is precluded by the one-year statute of limitations. This claim is thus **DISMISSED WITHOUT LEAVE TO AMEND**.

### d)   Fraudulent Concealment Claim Under Indiana Law

Ford also seeks dismissal of Plaintiff Kigin's (Indiana) fraudulent concealment claim under Indiana law because the economic loss doctrine bars such a claim. (Doc. No. 35-1 at 34.) "Indiana courts apply the economic loss rule to preclude recovery in tort for purely economic loss—pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service provided by the defendant)." *JMB Mfg., Inc.*

*v. Child Craft, LLC*, 799 F.3d 780, 785 (7th Cir. 2015) (quotation marks omitted). Here, Plaintiffs only allege purely economic loss related to the Vehicles they purchased. Plaintiffs do not provide an opposition to this claim, and so, the Court **DISMISSES** the claim **WITHOUT LEAVE TO AMEND**.

### E.     Nationwide MMWA Class Claim

Lastly, Ford asks that the Court dismissal or strike Plaintiffs' MMWA nationwide class claim. (Doc. No. 35-1 at 34.) The MMWA creates a private right of action for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Magnuson-Moss Warranty Act], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). A plaintiff may sue for violations of the MMWA's own terms or for breaches of warranty arising from state substantive law. "[T]he [Magnuson-Moss Warranty Act] does not make applicable state law that would not otherwise apply." *Scott v. Jayco Inc.*, 443 F. Supp. 3d 1143, 1151 (E.D. Cal. 2020). Where, as here, a plaintiff sues under the MMWA to challenge the defendant's alleged breach of its warranties under state law, "the claims under the Magnuson-Moss Act stand or fall with [the plaintiff's] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008).

The CAC provides that the MMWA claim is based upon "Michigan Breach of Warranty Law or, alternatively, the Breach of Warranty Laws of the 50 States." (CAC at 65.) Ford argues that Michigan law cannot apply to the claims of all class members, and no single state's law could apply nationwide to Plaintiffs' warranty claims. Furthermore, Ford also argues that the Court would potentially have to apply different state laws to each respective Plaintiff's claim. Differences in state laws governing each claim would create manageability concerns prohibiting class certification, Ford contends. (Doc. No. 35-1 at 35 (citing *Rasnic v. FCA US LLC*, No. CV 17-2064-KHV, 2017 WL 6406880, at *10 (D. Kan. Dec. 15, 2017).)

Plaintiffs offer that they will seek to certify their claims on a nationwide basis by grouping together those arising under materially similar states' laws, or under Michigan law, which is Ford's home state. (Doc. No. 38 at 28.) Whether Michigan law differs from the laws of other states in a way that is material to this litigation is not a proper inquiry at the pleading stage. Ultimately, Plaintiffs must demonstrate that the differences in state laws implicated by the putative class action are nonmaterial. Such a factual inquiry is more appropriately suited at the class certification stage. *See Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015); *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at *17 (S.D. Cal. Oct. 29, 2013). At this time, the Court concludes that it is unable to determine whether a nationwide class can be sustained in this case. Accordingly, Ford's motion to dismiss on these grounds is **DENIED WITHOUT PREJUDICE** and may be renewed at a later time.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Ford's motion to dismiss Plaintiffs' CAC. (Doc. No. 35.) Should Plaintiffs choose to do so, where leave is granted, they must file an amended complaint curing the deficiencies noted herein by **September 13, 2021**.


**IT IS SO ORDERED.**

Dated:  August 25, 2021

Hon. Anthony J. Battaglia
United States District Judge