UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LESSIN, CAROL SMALLEY, et al., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY, a Delaware corporation; and Does 1 through 10, inclusive,<br><br>Defendant. | Case No.: 19-cv-01082-AJB-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION** |

Presently before the Court is Defendant Ford Motor Co.'s motion for reconsideration of the Court's Order granting in part and denying in part Plaintiffs' motion for class certification. (Doc. No. 204.) Plaintiffs filed an opposition (Doc. No. 210), to which Ford replied (Doc. No. 211). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Ford's motion. Accordingly, the Court **VACATES** the hearing set for February 27, 2025, at 2:00 p.m.

## I. BACKGROUND

The facts of this case have been recited in previous orders. (*See, e.g.*, Doc. No. 202.) Ford challenges the Court's November 7, 2024 Order (1) granting in part and denying in part Ford's motion for partial summary judgment, and (2) granting in part and denying in

1

part Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3) (the "November 7 Order"). (Doc. No. 204.) Specifically, Ford asserts the Court committed clear error as to several findings related to the motion for class certification. (*Id.*)

As relevant to the instant motion, the Court granted summary judgment on Plaintiff Hamilton's Maine Unfair Trade Practices Act ("MUTPA") claim because the Court found Plaintiff Hamilton used her vehicle for business, not personal, use. (November 7 Order, Doc. No. 202, at 32–33.) Under MUTPA, a private right of action exists "*only* for those who have purchased goods, services or property 'primarily for personal, family or household purposes.'" *C-B Kentworth, Inc. v. Gen. Motors Corp.*, 706 F. Supp. 952, 957 (D. Me. 1988) (citing Me. Rev. Stat. Ann. tit. 5 § 213(1)). Here, Hamilton stated throughout her deposition that her F-250 was her business vehicle. (*See* November 7 Order at 33.) Later, in analyzing Plaintiffs' motion for class certification, the Court held that Plaintiffs' class definition—limited to persons who purchased or leased their vehicles for "personal, family or household purposes"—did not preclude a finding of predominance. (*Id.* at 51–53.) The Court found that "commercial purchasers (fleet and chassis-cab purchasers) can be excluded from the notice process using Ford's data, leaving only retail purchasers to receive notice and an opportunity to submit proof that their vehicle purchases were primarily for personal use." (*Id.* at 53.)

Next, the Court granted class certification of Plaintiffs' implied warranty claims under Maine and South Carolina law. (*Id.* at 70–73.) The Court noted that manifestation of the alleged defect is an element for implied warranty claims under Maine and South Carolina law. (*Id.* at 71 (citing *Lorfano*, 569 A.2d at 197; *Cole*, 484 F.3d at 729).) Moreover, "[w]hile the Court in the instant case analyzes the substantive laws of Maine and South Carolina, they similarly require manifestation of the defect [as in California]." (*Id.* at 72.) Thereafter, applying the Ninth Circuit's federal procedural law, the Court held that on class certification, the district court should not determine the merits of Plaintiffs' claims. (*Id.*) The Court ultimately found the predominance factor met and granted class certification. The Court further found predominance met as to merchantability, as

"Plaintiffs have alleged from the beginning of litigation that the Class Vehicles contain a design defect that was inherent in all Class Vehicles at the time of sale." (*Id.* at 73.)

The Court also found Ford's argument as to the varying rates of manifestation of the defect unavailing. (*Id.* at 57–58.) Ford argued that field performance differences exist across all dampers, and that there are "significant differences in performance across different platforms, models, and model years . . . ." (Doc. No. 136 at 27.) The Court noted that Ninth Circuit precedent forecloses this argument. (November 7 Order at 57.) As discussed in the November 7 Order,

> Where the injury alleged is a design defect, the Ninth Circuit has "held that proof of the manifestation of a defect is not a prerequisite to class certification." *Wolin*, 617 F.3d at 1173. This is because the injury occurred at the point of sale—when a putative member drove her car off the lot—not when the vehicle experiences the Shimmy. *See Butler*, 2017 WL 1398316, at *6 ("In general, courts have found consumer fraud claims amenable to class-wide treatment where the claims were premised on the existence of a common, class-wide defect present in all of the relevant products at the time of sale.").

(*Id.* at 57–58.)

The Court further denied the motion for class certification as to the P131 (Model Year ("MY") 2005–2007) and P538 (MY 2017–2019) models, finding that individual issues predominate over common questions as to Ford's knowledge of a defect. (*Id.* at 61.)

## II.    LEGAL STANDARD

District courts have the discretion to reconsider interlocutory rulings until a final judgment is entered. Fed. R. Civ. P. 54(b); *United States v. Martin*, 226 F.3d 1042, 1048–49 (9th Cir. 2000). While the Federal Rules of Civil Procedure do not set forth a standard for reconsidering interlocutory rulings, the "law of the case" doctrine and public policy dictate that the efficient operation of the judicial system requires the avoidance of re-arguing questions that have already been decided. *See Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989).

///

As such, most courts adhere to a fairly narrow standard by which to reconsider their interlocutory rulings. This standard requires: (1) an intervening change in the law; (2) additional evidence that was not previously available; or (3) that the prior decision was based on clear error or would work manifest injustice. *Id.*; *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "A motion for reconsideration is not an opportunity to renew arguments considered and rejected by the court, nor is it an opportunity for a party to re-argue a motion because it is dissatisfied with the original outcome." *FTC v. Neovi, Inc.*, No. 06–CV–1952–JLS JMA, 2009 WL 56130, at *2 (S.D. Cal. Jan.7, 2009) (quoting *Devinsky v. Kingsford*, No. 05 Civ.2064(PAC), 2008 WL 2704338, at *2 (S.D.N.Y. July 10, 2008)).

Additionally, Civil Local Rule 7.1.i governs motions for reconsideration in this District. The rule provides that a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." CivLR 7.1.i.1. The party seeking reconsideration under Civil Local Rule 7.1.i.1 must show "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." *Id.*

### III.  DISCUSSION

Ford requests reconsideration of the Court's class certification order on the ground that the Court committed clear error. (*See generally* Doc. No. 204.) Ford argues: (1) the Court clearly erred when it certified a Texas Deceptive Trade Practices Act claim because the Court had previously dismissed that claim and Plaintiff did not seek certification of it; (2) the Court's summary judgment order on Plaintiff Hamilton's business usage shows that individualized issues predominate as to whether each class member purchased their vehicle

for personal, family, or household use; (3) the Court's order certifying Maine and South Carolina implied warranty classes uses the incorrect standard for manifestation and conflicts with its summary judgment ruling regarding merchantability; and (4) Ford's argument that differing rates of manifestation defeat class certification was not fully addressed by the Court. (*See generally* Doc. No. 204-1.)

### A. Texas Deceptive Trade Practices Claim

First, in the November 7 Order, the Court granted mistakenly granted certification of a Texas Deceptive Trade Practices Act claim. (*See* November 7 Order at 85.) As noted by the Parties, this claim had previously been dismissed without leave to amend, (Doc. No. 41 at 23–24), and Plaintiffs did not seek certification of this claim, (*see* Doc. No. 120 at 4). Accordingly, the Court **GRANTS** the motion for reconsideration as to this claim.

### B. Personal, Family, or Household Use of Class Vehicle

Next, as to the argument that Hamilton's business usage shows that individualized issues predominate as to whether each class member purchased their vehicle for personal, family, or household use, Ford previously made this argument in its opposition to Plaintiffs' motion for class certification. (*See* Doc. No. 136 at 22–24.) The Court did not find it availing then, and Ford has not persuaded the Court it committed clear error, the initial decision was manifestly unjust, or there has been any relevant intervening law or newly discovered evidence the Court has not considered. Moreover, Ford's argument that allowing class members to attest to their purchase of their trucks for personal use deprives Ford of an opportunity to cross-examine the class members has no basis in law. Case law has acknowledged that, "to comport with due process, the court must 'preserve' the defendant's right 'to raise any individual defenses it might have at the damages phase.'" *Makaeff v. Trum Univ., LLC*, 309 F.R.D. 631, 642 (S.D. Cal. 2015). However, courts have resolved this issue by permitting bifurcation of trial into a liability stage and a damages stage. *Id.* at 642–43 (citing *Mahoney v. Farmers Ins. Exch.*, No. 4:09–cv–2327, 2011 WL 4458513, at *9 (S.D. Tex. Sept. 23, 2011), and *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014)). However, allowing such cross-examination of class members, as

Ford suggests, would be the death knell for class certification. As such, the Court rejects this claim.

### C. Maine and South Carolina Implied Warranty Classes

Ford contends the Court used the incorrect standard for manifestation of defects for Maine and South Carolina implied warranty classes. (Doc. No. 204-1 at 9.) Ford asserts the Court applied California substantive law in finding Maine's and South Carolina's manifestation requirements did not defeat certification. (*Id.* at 9–10.) However, Ford misunderstands the Court's previous ruling. In the November 7 Order, the Court first stated that "[m]anifestation of the alleged defect is an element for implied warranty claims under Maine and South Carolina law." (November 7 Order at 71.) The Court went on to note that district courts within the Ninth Circuit, which apply a "substantial certainty" test under their substantive law, are split procedurally as to whether arguments as to manifestation of the defect is a "merits" issue that is suitable for class certification. (*Id.*) The Court did not apply the Ninth Circuit's "substantial certainty" test in its November 7 Order, but rather held that "under federal *procedural* law on class certification, 'the district court should not determine the merits of any claims.'" (November 7 Order at 72.)

As to manifestation, Ford further asserts the Court should follow *Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998), and *Payne v. FujiFilm U.S.A., Inc.*, No. 07–385 (GEB), 2010 WL 2342388 (D.N.J. May 28, 2010), two out-of-circuit cases which have no binding on either this Court or the courts of Maine and South Carolina, which held that certification was not proper when individualized evidence was needed for every class member to prove that the defect manifested. (Doc. No. 204-1 at 10.) Ford previously made this argument in its opposition to the motion for class certification and has not identified any grounds for reconsideration. (*See* Doc. No. 136 at 37–38.)

Ford also argues the Court's finding that the issue of merchantability can be proven with common evidence is irreconcilable with its summary judgment ruling. (Doc. No. 204-1 at 11.) Specifically, Ford asserts that by certifying the implied warranty classes, "the Court is depriving Ford of its right to demonstrate that even if other class members

experienced steering oscillation, their individual vehicle uses could nevertheless demonstrate merchantability." (*Id.* at 12.) However, Ford's assertion merely attempts to litigate the merits of Plaintiffs' claims, and thus is improperly raised on a motion for reconsideration. Indeed, Ford's argument as to merchantability are better suited for trial or a motion for summary judgment. The Court **DENIES** the motion for reconsideration as to these claims.

### D. Differing Rates of Manifestation

Finally, Ford argues "the Court appears to have misunderstood, and therefore did not fully address, Ford's arguments that differing manifestation rates of steering oscillation show that non-classwide issues predominate on the question of defect." (Doc. No. 204-1 at 12.) To this point, as in its opposition to class certification, Ford asserts that warranty and complaint claim rates varied significantly across the platforms and model years. (*Id.*) As noted above the Court denied the motion for class certification as to the P131 (MY 2005–2007) and P538 (MY 2017–2019) models, with only the P356 (MY 2008–2010) and P473 (MY 2011–2016) classes certified. While the Court noted that proof of a manifestation was not a prerequisite to class certification, it also stated that "the injury [as alleged by Plaintiffs] occurred at the point of sale—when a putative member drove her car off the lot—not when the vehicle experiences the Shimmy." (November 7 Order at 57.) Thus, the Court did not find persuasive the differing manifestation rates across two of the four model year platforms. The Court considered, and rejected, Ford's argument concerning differing rates of manifestation, and the Court does not find grounds for reconsideration.

Because Ford fails to demonstrate entitlement to reconsideration, the Court **DENIES** its motion as to this claim.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Ford's motion for reconsideration of the Court's November 7, 2024 order. (Doc. No. 204.) The Court hereby **AMENDS** its November 7, 2024 Order to recognize that Plaintiffs'

Texas Deceptive Trade Practices Act claim was previously dismissed, and clarify that only a Breach of Express Warranty claim has been certified under Texas law.

**IT IS SO ORDERED.**

Dated: January 14, 2025

Hon. Anthony J. Battaglia
United States District Judge